**STATE of Iowa, Appellee,**

v.

**Anthony JAMISON, Appellant.**

No. 91–32.

Supreme Court of Iowa.

March 18, 1992.

As Corrected March 18, 1992.

Roxy M. Schumann, Davenport, for appellant.

Bonnie J. Campbell, Atty. Gen., Thomas G. Fisher, Jr., Asst. Atty. Gen., William E. Davis, County Atty., and Realff Ottesen, Asst. County Atty., for appellee.

CARTER, Justice.

Pursuant to our prior grant of discretionary review, defendant, Anthony Jamison, challenges an order denying his motion to suppress evidence in a pending criminal prosecution. The issues on appeal are: (1) whether the warrant on which police officers relied in searching defendant's automobile was issued on a showing of probable cause; and (2) whether, if probable cause was lacking, the evidence is nevertheless admissible because the warrant was obtained and executed in good faith. We answer both questions in the negative and reverse the order of the district court.

Sometime prior to September 1, 1990, Davenport police officers received information from a confidential informant that one Terry Rodriguez was trafficking in controlled substances. A determination was made to place his residence under surveillance. This surveillance commenced four days before the issuance of the search warrant challenged on this appeal. Less than forty-eight hours before the issuance of the challenged warrant, a police informant successfully purchased cocaine at the Rodriguez residence as part of a controlled buy.

Within forty-eight hours after the controlled buy, a Davenport police detective prepared an application for a search warrant, which was presented to a district associate judge. The warrant application contained three sworn assertions by a Davenport police detective: (1) that Rodriguez had been arrested on November 13, 1988, and charged with possession with intent to deliver cocaine; (2) that Rodriguez was observed on December 20, 1988, associating with well-known drug dealers; and (3) a recitation of the facts surrounding the controlled buy, which had recently taken place at the Rodriguez residence.

The district associate judge approved the warrant application and issued the warrant at approximately 7:30 p.m. on September 5, 1990. Almost immediately thereafter the officers conducting surveillance at the Rodriguez residence were notified by telephone and radio communication that the warrant had been issued.

In issuing the warrant, the district associate judge placed the following handwritten statement above his signature: "Surveillance and controlled buy insures credibility of buy." The warrant authorized the police to search:

> The residence of Terry Rodriquez at 2624 Fair St. in Davenport, Iowa. Including Rodriquez himself and a 1976 Chevrolet coupe with Ill plates KC 3973 also any other vehicles owned by or in the control of Rodriquez at the time of execution of the search warrant. Any out buildings and storage areas under the control of the occupants of the residence and *the person and vehicles of any other subjects at the residence after the signing of the search warrant.*

(Emphasis added.)

The officers conducting surveillance at the Rodriguez residence maintained a log of vehicles stopping at the house after the warrant was issued. Defendant's automobile, a red Mazda RX7, was the second automobile to arrive.[1] It arrived exactly one hour following the issuance of the search warrant. The driver entered the house and left seven minutes later. A police detective was dispatched to follow, stop, and search that vehicle. With the help of a uniformed police officer, he did so. The stop was accomplished a few blocks from the Rodriguez house so that the occupants would not be apprised.

Defendant, the driver of the red Mazda, stopped after being alerted by the officers' flashing lights and siren. As the officers approached, he placed something on the car floor. After defendant was ordered from the car, the officers found a specially folded paper wrapper cut from a travel magazine on the seat of the car and a white powdery substance on the vehicle's floorboard. The white substance was later determined to be cocaine. The paper wrapper matched a scissored travel magazine later found at the Rodriguez residence.

Defendant was arrested and later charged with possession of a schedule II controlled substance. Later that evening, the search warrant was executed at the Rodriguez residence, where police found and seized a glass containing a white powdery substance that tested positive for cocaine, a sifter, and packaging materials.

Defendant moved to suppress all evidence obtained from the seizure and search of his automobile and any statements obtained from him by police after his automobile was stopped. This motion was predicated on fourth amendment grounds. It asserted that defendant's vehicle was stopped and searched in the execution of a warrant that was issued without probable cause to search his automobile. The motion to suppress also asserted that any statements made to police officers by defendant after the stopping of his vehicle, either before or after he was placed under arrest, were derivative of the illegal seizure and search of his automobile.

The district court denied the motion to suppress. In support of that ruling, the

---

1. The first automobile to arrive following issuance of the warrant was a brown Oldsmobile, which drove on the Rodriguez property at 8:15 p.m. and left at 8:25 p.m. Detectives testified at the suppression hearing that this car was pursued by police officers, but the driver successfully eluded them in traffic.

court stated its belief that the court of appeals, in *State v. Ballew,* 456 N.W.2d 230 (Iowa App.1990), had upheld a vehicle search against a fourth amendment challenge under similar circumstances. We review that ruling on this appeal.

## I. *The Probable Cause Issue.*

Defendant argues that no showing was made in the warrant application and no facts existed at the time the warrant was issued to provide probable cause under the fourth amendment for the seizure and search of his automobile. He further contends that the court of appeals decision in *Ballew* in no way authorizes the search that he is challenging in the present case.

The State in its response makes a convincing argument for probable cause to search the Rodriguez residence. It suggests no facts, however, either in the warrant application or dehors the warrant application that would show that at the time the warrant issued there was some nexus between the defendant or his vehicle and the criminal activity being carried on at the Rodriguez residence. To defeat the motion to suppress, the State must show a nexus between criminal activity, the things to be seized, and the place to be searched. *State v. Seager,* 341 N.W.2d 420, 427 (Iowa 1983).

■ If a warrant calls for the search of multiple places or persons, probable cause must exist as to each location or person sought to be searched under authority of the warrant. This requirement has been described by one commentator in the following terms:

[W]here the warrant authorizes seizure of objects W, X and Y but the probable cause showing in the affidavit is only as to objects W and X, or where the warrant authorizes seizure of all objects of Z variety but the probable cause showing only covers some such objects ... the problem is essentially a deficiency in probable cause showing vis-à-vis certain of the described items. Such a case, then, is analytically most similar to that in which it turns out the warrant is lacking in any probable cause showing, and ought to be resolved in the same way.

1 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* §. 1.3(f), at 68–69 (1987) [hereinafter W. LaFave].

In another volume of his treatise, this commentator categorically condemns the type of dragnet warrant that defendant challenges in the present case:

Sometimes a warrant will be issued for the search of certain premises and "all automobiles thereon." Such a warrant, it would seem, is particularly vulnerable to challenge with respect to the vehicle description. As with any other description based solely on location, there can be no assurance that the vehicle or vehicles as to which information was gathered during an earlier investigation will be the vehicles found on the premises at the time of the search. The risk of error is compounded when the plural "all automobiles" is used. Moreover, such a description suggests that there is likely to be a probable cause deficiency as to the automobiles; the "all automobiles" language might well have been added without any evidence tending to show that vehicles on the premises were likely places of concealment for the items to be seized.

2 W. LaFave § 4.5(d), at 225 (1987).

Although the State contends that the suppression of evidence issue raised in the present case was decided favorably to the State in *Ballew* on similar facts, a reading of that case does not support this contention. The court of appeals specifically answered the probable cause argument in that case by reference to facts in the warrant application indicating the presence of defendant's automobile on the targeted premises, where drugs were located, prior to the issuance of the warrant.

The court of appeals also observed in *Ballew* that surveillance in that case indicated that the defendant was one of the regular occupants of the targeted premises. *Ballew,* 456 N.W.2d at 232. In addition, both of the cases cited by the court of appeals in upholding the search involved situations in which a particularized showing was made in the warrant application tying the automobiles and persons to be

searched to criminal activity at that location.

◼ In addition, the *Ballew* analysis also involved a claim of investigatory stop under the authority of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The State has made no effort in either the district court or in this court to assert that the stop of defendant's automobile was sustainable as an investigatory stop as a result of his entry and exit of the targeted premises where drugs were being sold. Moreover, the officers who stopped defendant's automobile testified at the suppression hearing that they were acting under authority of the search warrant that had been issued. We have consistently held that in determining the validity of an investigatory stop police officers are bound by the real reasons for their actions. The stop may not be upheld based on reasons that might have existed but in fact did not. *State v. Lamp*, 322 N.W.2d 48, 51 (Iowa 1982); *State v. Aschenbrenner*, 289 N.W.2d 618, 619 (Iowa 1980); *State v. Cooley*, 229 N.W.2d 755, 757–59 (Iowa 1975). This is particularly true when the validity of an investigatory stop depends on an officer's exercise of judgment that in fact was never made. *State v. Bailey*, 452 N.W.2d 181, 183 (Iowa 1990).

◼ In contrast to *Ballew,* there was no showing in the warrant application in the present case of any nexus between defendant or his automobile and the existence of criminal activity at the targeted premises. Several of the officers who took part in the application for the search warrant and the execution of the warrant testified at the suppression hearing. Their testimony shows that prior to the execution of the warrant neither defendant nor his automobile had been seen at the targeted location. The officers had no knowledge of any relationship between defendant and Rodriguez other than the fact that defendant had at one time been Rodriguez's lawyer.

Based on our review of the warrant application and the additional record made at the suppression hearing, we find a complete absence of probable cause for a warrant authorizing the search of defendant's person or his automobile. The district court erred in finding the presence of probable cause.

## II. *The Leon Issue.*

We next consider the State's effort to avoid suppression of the fruits of the illegal search on the strength of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

In measuring the scope of the exclusionary rule to be ascribed to federal fourth amendment violations, federal law is controlling. Because the Supreme Court in *Leon* has recognized a so-called good-faith exception to the exclusionary rule, so must we in making this federal law determination. As we have previously recognized, however, *Leon* does not provide an across-the-board reward for good faith. *State v. Iowa Dist. Court*, 472 N.W.2d 621, 624–25 (Iowa 1991).

◼ Under the *Leon* rule, the exclusion of illegally obtained evidence is to be refused only on an ad hoc basis in situations in which the officer's good-faith motivation casts doubt on the deterrent effect of an exclusionary rule *in the particular situation.* Conversely, as *Leon* expressly recognized, the exclusionary rule should continue to operate in "those areas where its remedial objectives are thought most efficaciously served." *Leon*, 468 U.S. at 908, 104 S.Ct. at 3412–13, 82 L.Ed.2d at 689.

One commentator has interpreted *Leon* as follows:

> This reference [in *Leon* ] to a "case-by-case" approach, taken together with the other passages quoted, supports the conclusion that the Court meant to fashion a sliding scale of remedies to be applied in accordance with the nature of the violation of the right. The Court also appears to have decided that though it could take judicial notice that exclusion is not necessary to deter certain violations, other situations may emerge "case-by-case" that will also require the use of the exclusionary rule to effectuate fourth amendment rights.

Goldstein, *The Search Warrant, the Magistrate, and Judicial Review,* 62 N.Y.U.L.Rev. 1173, 1204–05 (1987).

■ In the present situation, involving a dragnet search warrant, the deterrent aspects of the exclusionary rule are well served by exclusion of the challenged evidence. This is because a refusal to exclude the evidence will certainly have the effect of encouraging similar dragnet search warrants in the future. It is not necessary, however, to go beyond the examples contained in *Leon* itself to justify exclusion of the evidence.

The Court in *Leon* identified certain situations in which exclusion is still warranted. One such situation deals with warrants that are so overbroad as to be facially invalid. *See Leon,* 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 699. To the extent that the warrant in the present case authorized the search of "the person and vehicles of any other subjects at the residence after the signing of the search warrant," we believe it was facially deficient with respect to overbreadth.

Another situation identified in *Leon* where exclusion is warranted involves a warrant application "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* As indicated in the prior division of this opinion, the indicia of probable cause in the present case must be considered with respect to defendant's automobile rather than the Rodriguez residence. The quantum of evidence offered in the search warrant application to show a nexus between criminal activity or evidence of crime and defendant's automobile or person was zero.

In *State v. Iowa District Court,* 472 N.W.2d at 624–25, we found *Leon* to be inapplicable because of facial invalidity of the warrant and also because the magistrate's probable cause finding was not objectively reasonable. *Id.* The lack of objective reasonableness appears to be even greater in this case. *See also United States v. Hove,* 848 F.2d 137, 140 (9th Cir. 1988) (information providing nexus to place to be searched was so deficient that any official belief in the existence of probable cause must be considered unreasonable); *Nelms v. State,* 568 So.2d 384, 388 (Ala. App.1990) (staleness of events tending to establish probable cause rendered belief of probable cause unreasonable).

After considering all arguments presented, we conclude that the district court should have sustained the motion to suppress evidence derived from the seizure and search of defendant's automobile and evidence derivative therefrom. Such derivative evidence includes statements made by defendant after his vehicle was stopped, both before and after he was placed under arrest. We reverse the order of the district court and remand the case for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

All Justices concur except HARRIS, J., and McGIVERIN, C.J., and LARSON and SCHULTZ, JJ., who dissent.

HARRIS, Justice (dissenting).

The majority concludes that the warrant in this case, because of its "dragnet" character, was issued without probable cause. After study, though with some hesitation, I agree. I however dissent from the reversal because I am convinced the warrant was issued by a neutral and detached magistrate and that the officers reasonably relied on it.

I. As the majority recognizes, the United States Supreme Court adopted the good-faith exception to the exclusionary rule for cases involving searches conducted by police who reasonably rely upon a warrant issued by a neutral and detached magistrate. *United States v. Leon,* 468 U.S. 897, 913, 104 S.Ct. 3405, 3415, 82 L.Ed.2d 677, 692 (1984). The court concluded that the decision to suppress evidence obtained pursuant to a warrant should be made on a case-by-case basis. *Id.* at 918, 104 S.Ct. at 3418, 82 L.Ed.2d at 695. The exclusionary rule "is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Id.* at 916, 104 S.Ct. at 3417, 82 L.Ed.2d at 694. When officers act in good faith, society should not be de-

prived of reliable evidence for use in the truth-finding process at trial.

To be sure, the *Leon* holding is circumscribed; the court also concluded that good-faith reliance does not exist in any of the following situations: (1) "the magistrate or judge ... was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "the issuing magistrate wholly abandoned his judicial role...."; (3) "a warrant [is] based on 'an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'"; and (4) "a warrant [is] so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 698–99 (citations omitted).

II. The majority first relies on the fourth *Leon* escape from the good-faith exception. The majority concludes that the portion of the warrant authorizing the search of all persons and all vehicles at the Rodriguez residence was so facially deficient that the executing officers could not presume the warrant to be valid. It is impossible for me to agree that the officers could not believe in the validity of the warrant.

Several decisions have upheld vehicle searches executed pursuant to warrants containing an "all vehicle" type description. *United States v. Alva*, 885 F.2d 250, 252 (5th Cir.1989) (upheld a warrant authorizing the search of "any and all vehicles found parked on the premises"); *People v. Juarez*, 770 P.2d 1286, 1292–93 (Colo.1989) (upheld a warrant authorizing the search of "all vehicles ... on the property"); *State v. Booream*, 560 So.2d 1303, 1304 (Fla.Dist. Ct.App.1990) (upheld a warrant authorizing police to search a residence and "any and all outbuildings and vehicles thereon"); *Richardson v. State*, 547 So.2d 323, 324 (Fla.Dist.Ct.App. 1989) (upheld a warrant authorizing the search of "all vehicles" on the premises); *State v. Haugee*, 402 So.2d 1216, 1218 (Fla.Dist.Ct.App.1981) (upheld a

warrant authorizing the search of a residence and "any and all outbuildings and vehicles thereon"); *Albert v. State*, 155 Ga.App. 99, 100–101, 270 S.E.2d 220, 221– 22 (1980) (upheld a warrant authorizing police to search "all automobiles" located within the curtilage of a service station where the vehicle was sufficiently connected to the premises); *Green v. State*, 161 Tex.Crim. 131, 132, 275 S.W.2d 110, 111 (1955) (upheld warrant authorizing search of "all automobiles" on a used car lot). *But see Peavy v. State*, 336 So.2d 199, 202 (Ala.Crim.App.1976) (warrant authorizing the search of "any motor vehicle adjacent to [a] motor home" did not particularly describe the place to be searched); *State v. Barnett*, 788 S.W.2d 572, 576 (Tex.Crim. App.1990) (concluded that an "all vehicles" description in a search warrant did not meet the fourth amendment particularity requirement).

Ordinarily a description is sufficient "if the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757, 760 (1927). In *United States v. Alva*, 885 F.2d at 250, the Fifth Circuit relied only on this standard in evaluating whether a vehicle that arrived after a search began was within the scope of a warrant authorizing the search of "any and all motor vehicles" located at a residence.

III. The majority also claims that the third escape from the *Leon* good-faith exception is inapplicable because the warrant was so lacking in indicia of probable cause as to render official belief in its existence unreasonable. I disagree. The perceived flaw is that the warrant allowed the search of all vehicles driven by people who stopped at the house without probable cause. The magistrate and district court found otherwise. Included in the affidavit was the fact that Rodriguez associated with known drug dealers, and that an informant, while under police surveillance, purchased drugs from the residence. By including the controlled buy in the warrant application, the police contended they established drug trafficking at the Rodriguez

residence. They believed that, having done so, they were justified in searching any vehicles driven by people who stopped briefly at the residence. This is because customers of drug dealers typically carry drugs away from the place where they purchased them.

The officers thought the warrant was authorized under *State v. Ballew,* 456 N.W.2d 230, 232 (Iowa App.1990), which involved a warrant to search "any vehicles at the property under the control of the occupants" of a specified home. I am persuaded by the majority's conclusion that *Ballew* is not on point and does not authorize the dragnet search permitted here. On the other hand I strongly disagree with the view that the officers were unreasonable in thinking otherwise. The factors distinguishing *Ballew* are more readily apparent to us on detached appellate review than they were to the harried officials at the time.

The validity of a warrant authorizing the search of "all vehicles" is an issue of first impression with us. The officers and the magistrate obviously did not have the guidance of the majority's holding in this appeal disapproving the one issued here. Because they lacked that advantage, I disagree with the majority's conclusion that the warrant application was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

The officers' actions strike me as having been in good faith. Indeed the majority's narrow and restrictive view of *Leon* is apt to discourage officers in the future from applying for search warrants at all. It is arguable that, had the officers made a stop of defendant on a purely investigatory basis, the search of this defendant could be upheld as a *Terry* stop because the officers had "specific and articulable cause to support a reasonable belief that criminal activity may have occurred." *State v. Lamp,* 322 N.W.2d 48, 51 (Iowa 1982) (quoting *State v. Aschenbrenner,* 289 N.W.2d 618, 619 (Iowa 1980)).

The Davenport police department watched while an informant purchased drugs from Terry Rodriguez's house.

They obtained a search warrant which allowed the police to search that house. The warrant also authorized the search of any people who were at Rodriguez's house and the cars belonging to those people. Anthony Jamison arrived at Rodriguez's house after this warrant was obtained. He parked within the curtilage of the Rodriguez home. He stayed for a short period of time, which was consistent with a drug transaction. As Jamison left, his car was followed. Pursuant to the search warrant obtained by the police, Jamison's car was stopped. An officer, while approaching the car, saw Jamison trying to conceal something under his seat. Jamison was ordered out of his car. When he opened the car door, cocaine was spilled on the floorboard of his car.

The State is now deprived of this evidence because we now hold the dragnet warrant was invalid. The situation seems to me to be entirely appropriate for affirmance under *Leon.* I would affirm.

McGIVERIN, C.J., and LARSON and SCHULTZ, JJ., join this dissent.