STATE of Iowa, Appellee,

v.

Chad Alexander PRIOR, Appellant.

No. 99–828.

Supreme Court of Iowa.

Sept. 7, 2000.

Rehearing Denied Oct. 10, 2000.

Linda Del Gallo, State Appellate Defender, and Dennis D. Hendrickson, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Mary E. Tabor, Assistant Attorney General, Denver D. Dillard, County Attorney, and Brian D. Claney, Assistant County Attorney, for appellee.

CADY, Justice.

Chad Prior appeals his conviction and sentence for possession of a controlled substance in violation of Iowa Code section 124.401(5) (1997). He argues the district court erred in overruling his motion to suppress the marijuana seized from his person pursuant to an "all persons" search warrant. We reverse and remand.

## I. Background Facts and Proceedings.

On August 31, 1998, a police officer from the Cedar Rapids Narcotics Bureau received an anonymous telephone call alerting him to the possibility of illegal drugs being sold from an apartment on the northeast side of Cedar Rapids. The caller suspected drugs were being sold from the upper level apartment at 514 16th Street NE. The caller suspected this based largely upon the unusual traffic pattern of visitors to the apartment. On numerous occasions, the caller had observed several people enter the apartment.

These people would usually arrive by vehicle, park the vehicle a short distance from the apartment, and approach the apartment on foot. The caller said a male in his mid-twenties lived in the apartment.

The officer who received the tip believed the type of activity described by the caller was indicative of drug dealing. The officer investigated the call by removing a bag of trash left outside the apartment on the day designated for trash pick up in that area of the city. The subsequent search of the trash bag at the police station revealed seven plant stems and numerous sandwich-size baggies. A chemical test confirmed the stems were marijuana. A discarded piece of mail addressed to "A. Langston" at "514 16th Street NE, upper apartment" was also found among the garbage. Police records indicated an individual named Aaron Langston, with the address of 514 16th Street NE, had been arrested in March 1998.

On September 24, 1998, the officer made an application to search the upper level apartment. The officer disclosed the information he obtained from the unnamed informant and his investigation in an affidavit. The officer also provided additional information based on his experience as a narcotics investigator. He opined that people "who use or sell controlled substance[s] will often discard ... marijuana stems and plastic baggies." The officer further stated that drugs are commonly hidden or held on a person or a vehicle, and that persons who "use, sell or distribute controlled substances out of [their] dwelling or vehicle" have no legal ties to the dwelling or vehicle but "only use ... such places ... to use or sell controlled substances."

Based on the information in the application and affidavit for search warrant, a magistrate issued a warrant on September 24, 1998. The warrant authorized officers to search the upper level apartment, "all persons located in the upper apartment," and any vehicles of those who resided in the apartment for controlled substances, drug-related items, and weapons.

Police executed the warrant on October 1, 1998. Force was used to gain entry into the apartment after police received no response from knocking on the door. After police entered the apartment, they determined no persons were present. They then began to execute the warrant. While the warrant was being executed, a group of seven men, including Prior and Langston, entered the apartment. Relying upon the "all persons" provision in the warrant, police detained and searched each individual. They discovered marijuana hidden in Prior's sock. Prior was subsequently arrested and charged with possession of marijuana in violation of Iowa Code section 124.401(5).

Prior moved to suppress the evidence as the fruits of an illegal search. He argued the warrant was an unconstitutional "blanket or general search warrant" in violation of the Fourth Amendment to the United States Constitution and article one, section eight of the Iowa Constitution.

The district court found no probable cause to search Prior. However, it overruled the motion based upon the officers' good faith reliance upon the validity of the search warrant.

Prior waived his right to a jury trial and agreed to a trial to the court based on the minutes of testimony. The court found Prior guilty as charged and fined him $250, plus court costs and attorney fees. He was also ordered to receive a substance abuse evaluation. Prior appeals his conviction and sentence based upon the dis-

trict court's denial of his motion to suppress.

## II. Scope of Review.

■ Prior challenges the district court's denial of his motion to suppress based on the unreasonableness of the search. "We review this constitutional question de novo in light of the totality of the circumstances." *See State v. Canas,* 597 N.W.2d 488, 492 (Iowa 1999) (citing *State v. Cadotte,* 542 N.W.2d 834, 836 (Iowa 1996)).

## III. "All Persons" Search Warrants.

The Fourth Amendment to the United States Constitution states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Iowa Constitution has a nearly identical provision found in article I, section 8. Iowa Const. art. I, § 8. Consequently, we consider the two provisions nearly identical "in scope, import, and purpose." *State v. Bishop,* 387 N.W.2d 554, 557 (Iowa 1986) (quoting *State v. Groff,* 323 N.W.2d 204, 207 (Iowa 1982)).

■ One important command of the Fourth Amendment which lies at the core of the issue in this case is the warrant that is issued must describe the place or person to be searched with particularity. This important limitation guards the right of privacy from arbitrary police intrusion. *State v. Thomas,* 540 N.W.2d 658, 662 (Iowa 1995). It helps minimize the risk

that the officers executing the search warrant will mistakenly search an area or person not intended by the issuing magistrate. *See* 2 Wayne R. LaFave, *Search and Seizure* § 4.5, at 513 (1996) [hereinafter LaFave]. The officer must be able to reasonably ascertain and identify the place or person to be searched so that nothing is left to the discretion of the executing officer. *Thomas,* 540 N.W.2d at 662. Additionally, the particularity requirement can relate to the probable cause requirement in many circumstances. 2 LaFave § 4.5, at 513. The lack of a specific description may indicate an insufficient showing that the items described will be found. Thus, both the probable cause and the particularity requirements are implicated by warrants that are too general.

■ A search warrant is typically directed at a particular location or thing to be searched. However, it can also authorize the search of both a place and persons. *See* 2 *id.* § 4.5(e), at 542–45. When this is done, the particularity requirement separately applies to the place to be searched and to each person to be searched. *See State v. Gogg,* 561 N.W.2d 360, 368 (Iowa 1997); 2 LaFave § 4.5(e), at 545. In this case, the warrant not only targeted the apartment unit and any vehicles of the residents of the apartment, but "all persons located in" the apartment.

■ Although general warrants are impermissible under the Fourth Amendment, we have previously indicated that an "all persons present" warrant is not per se unreasonable. *Thomas,* 540 N.W.2d at 664–66 (noting the court was not condemning an "all persons" warrant across the board). When issued in connection with drug trafficking at a specific location, "all persons" warrants must be viewed differ-

ently from the general exploratory warrants condemned in the past. *State v. Kinney,* 83 Ohio St.3d 85, 698 N.E.2d 49, 53 (1998). Illegal drug trafficking is a catastrophic problem in this country and individuals present in a residence used by drug traffickers raise serious concerns for police. *Id.* A drug house often has numerous people present, many who may be armed and dangerous. Obvious concerns for the safety of all individuals on the premises exist, which helps distinguish an "all persons" warrant from a general exploratory search. *Id.* Yet, despite these legitimate concerns, the Fourth Amendment requires an "all persons" warrant to be supported by facts showing a "substantial probability that the authorized invasions of privacy will be justified by the discovery of the items sought from all persons present when the warrant is executed." *Thomas,* 540 N.W.2d at 664 (quoting *People v. Nieves,* 36 N.Y.2d 396, 369 N.Y.S.2d 50, 330 N.E.2d 26, 34 (1975)). Thus, the particular facts of each case must be examined to determine the sufficiency of a warrant to search persons identified in the warrant by their presence at a particular place.

In *State v. Gogg,* we held the affidavit for an "all persons" warrant was insufficient to justify the search of three unnamed people present in the residence to be searched. *Gogg,* 561 N.W.2d at 368. The affidavit in question failed to mention the anticipated presence of anyone other than the two named in the warrant, nor specified why any third parties, if present, would be likely to have evidence of a crime on their person. *Id.* We recognized the reasonableness of the issuing judge's inference of illegal drug sales at the residence, but noted there were "no statements [in the affidavit] that give rise to an inference that all persons on the premises would

necessarily be involved in this activity." *Id.*

In *State v. Thomas,* we held a warrant for the search of all persons located at a particular drinking establishment known as a "focal point" of drug activity was unsupported by sufficient facts in light of the legitimate and public nature of the bar. *Thomas,* 540 N.W.2d at 665. There were no facts showing the bar to be an "illegal after hours drinking house." *Id.* Instead, it was a business where completely innocent, unsuspecting people could enter to make a legitimate purchase of legal merchandise. *Id.* at 665–66.

In *State v. Jamison,* 482 N.W.2d 409 (Iowa 1992), we held a search of an unnamed and previously unidentified visitor's car after leaving the residence to be searched was unsupported by the affidavit. *Jamison,* 482 N.W.2d at 413. The warrant was based upon police surveillance of a residence suspected of illegal drug activity, a controlled purchase of cocaine from the individual listed on the warrant, and information from a confidential informant. *Id.* at 410–11. At no time prior to the execution of the warrant was the defendant or his vehicle seen at the premises, nor linked to the suspected drug dealer. *Id.* at 413. The warrant authorized the search of "the person and vehicles of any other subjects at the residence after the signing of the search warrant." *Id.* at 411. We found "a complete absence of probable cause" authorizing the search of Jamison's person or automobile. *Id.* at 413.

Our cases reveal the difficulty with "all persons present" warrants is not the lack of particularity to guide the executing officer to locate those covered under the warrant, but the particularity of the warrant in the sense of probable cause regarding whether all persons in the particular place

to be searched are involved in criminal activity in such a manner that they will possess the evidence to be seized. *See Gogg*, 561 N.W.2d at 368; 2 LaFave § 4.5(e), at 546–47. There must be evidence "that give[s] rise to an inference that all persons on the premises would necessarily be involved in th[e] [illegal] activity." *Gogg*, 561 N.W.2d at 368. Thus, "all persons" warrants meet the particularity and probable cause requirements of the Fourth Amendment only in limited circumstances where there is "probable cause to believe that the premises are confined to ongoing illegal activity and that every person within the orbit of the search possesses the articles sought." *Nieves*, 369 N.Y.S.2d 50, 330 N.E.2d at 34.

■ In *Thomas*, we identified several criteria to help determine the validity of an "all persons" warrant. *Thomas*, 540 N.W.2d at 664. In adopting the factors established in *Nieves*, 369 N.Y.S.2d 50, 330 N.E.2d at 34, we said:

> Under the *Nieves* standards, the application must set out the character of the premises, including its location, size, and public or private character; the nature of the illegal conduct at issue; the number and behavior of persons expected to be present when the warrant is to be executed; whether any persons unconnected with the alleged illegal activity have been seen on the premises; and the precise area and time in which the alleged activity is to take place.

*Thomas*, 540 N.W.2d at 664.

We also emphasized the need to consider the necessity for the particular search, the nature of the suspected crime, and the difficulty of being more specific in the description. *Id.* (noting the *Nieves* court's emphasis on these three factors). These same factors have been adopted by other state courts as the basis for supporting "all persons" warrants. *See Commonwealth v. Smith*, 370 Mass. 335, 348 N.E.2d 101, 107 (1976); *Kinney*, 698 N.E.2d at 56. One commentator summarized it this way:

> The more public a place, the less likely a search of all persons will be sustained. The warrant must carefully describe the character of the premises and the nature of the illegal activity going on; also, the magistrate must be told how many people frequent the place, when they come and leave, and what they appear to be doing. Another important factor is whether anyone who seems to have no connection with the illegal conduct is ever seen there. If such a showing is not made, the warrant will be struck down.

I William E. Ringel, *Searches & Seizures, Arrests and Confessions* § 5.6(e), at 5–48 (2d ed.1999) (citing *Wilson v. State*, 136 Ga.App. 70, 221 S.E.2d 62 (1975), and *Nieves*, 369 N.Y.S.2d 50, 330 N.E.2d at 26).

Although some jurisdictions find "all persons" warrants to be unconstitutional, most jurisdictions, like Iowa, draw on the particular facts and circumstances to determine the validity of such warrants. *See Betts v. State*, 920 P.2d 763, 764–66 (Alaska Ct.App.1996) (application included surveillance, controlled buys, numerous tips, and a complaint from one hour earlier of drug transactions); *People v. Johnson*, 805 P.2d 1156, 1161 (Colo.Ct.App.1990) (premises were source of major drug traffic, in a tightly controlled access apartment which was heavily guarded); *State v. Range*, 642 So.2d 1318, 1322 (La.Ct.App.1994) ("Common sense suggests that there is a much greater likelihood that a person found in a small private residence containing drugs will be involved in the drug activity occurring there than an individual who happens

to be in a public tavern where the bartender is suspected of possessing drugs. Police officers are not blind to these realities and [courts] should not encourage them to be.") (quoting *United States v. Reid,* 997 F.2d 1576, 1578–79 (D.C.Cir.1993)); *State v. Allard,* 674 A.2d 921, 922 (Me.1996) (affidavit for warrant included laundry list of facts supporting finding that premises used primarily for drug transactions); *Smith,* 348 N.E.2d at 106 (confidential informant saw drug transactions firsthand, police surveillance revealed known drug players were active in premises); *State v. Hinkel,* 365 N.W.2d 774, 776 (Minn.1985) (search of "afterhours joint" valid as it was "unreasonable to expect the officers to name in the warrant the people to be searched in such a place because customers could vary from day to day" and those there would only be there for one reason); *State in re L.Q.,* 236 N.J.Super. 464, 566 A.2d 223, 226–27 (App.Div.1989) ("the description of the activity actually observed provided a firm foundation for the suspicion or belief that any person in the private premises was involved in the overt unlawful activity," also "the premises involved, a basement apartment, were private and, therefore, less likely to contain innocent bystanders") (quoting *People v. Betts,* 90 A.D.2d 641, 456 N.Y.S.2d 278, 279 (N.Y.App.Div.1982)); *State v. De Simone,* 60 N.J. 319, 288 A.2d 849, 851 (1972) (search of automobile passenger upheld as "presence in an automobile is more apt to suggest complicity in the illegal use to which the car is then being put"); *Kinney,* 698 N.E.2d at 55–56 (small, private nature of premises, pattern of traffic for short periods of time at all hours, controlled buys, and low possibility of innocent bystanders); *Commonwealth v. Graciani,* 381 Pa.Super. 626, 554 A.2d 560, 562 (1989) (confidential informant's tips which had

proven to be reliable in past sufficient); *State v. Covington,* 904 P.2d 209, 213 (Utah Ct.App.1995) (affidavit supported finding of likelihood that all persons present in apartment were dealing drugs, sufficient nexus established, search of unnamed defendant upheld); *see also* Angela S. Overgaard, Comment, *People, Places, and Fourth Amendment Protection: The Application of* Ybarra v. Illinois *to Searches of People Present During the Execution of Search Warrants on Private Premises,* 25 Loy. U. Chi. L.J. 243, 267–68 (1994). A review of these cases confirms that the pivotal inquiry is whether the facts and circumstances as revealed in the application for the search warrant demonstrate probable cause that each person on the premises to be searched will possess, at the time of the search, the evidence sought under the warrant. *Kinney,* 698 N.E.2d at 54.

■ We begin our consideration of the affidavit and application for search warrant in this case with the nature of the premises. Although a private residence, the apartment did not possess signs that it was used exclusively or even primarily as a drug house. The typical traffic pattern of visitors to the apartment and a search of the trash from the apartment supported probable cause that illegal drug transactions occurred in the apartment. Yet, there was no evidence to further suggest all persons in the apartment were involved in the transactions. The affidavit indicated the apartment was located in a residential neighborhood and was used by Aaron Langston as his residence. The traffic pattern identified by the neighbor informant implied it was not the exclusive means for visitors to approach the apartment. The observations of the informant were confined to "numerous" occasions

and "most" of the visitors. This necessarily implied there were other occasions when people would approach the apartment in a manner not indicative of drug transactions. Police did not investigate or conduct surveillance to determine if all persons who went to the apartment were involved in drug transactions, or the amount of time visitors would spend in the apartment, or the time of day of the suspicious activity.

The officer's attempt to transform the apartment into a drug house through his opinion was contradicted by other information. The apartment was identified as a residence and the trash revealed mail was delivered at the apartment. Thus, contrary to the premise of the officer's opinion, the apartment was not a place in which no person maintained a legal connection. We agree with the line of cases which recognize the likelihood of innocent persons being present in a residence, regardless of the existence of illegal activity on the premises. *See State v. Wynne*, 552 N.W.2d 218, 221 (Minn.1996) ("relatives, guests or hired workpeople could have been present on the residential premises to be searched"); *State v. Anderson*, 415 N.W.2d 57, 61 (Minn.Ct.App.1987) ("salesmen, mailmen, repairmen, friends" and family are likely to be present in a residential neighborhood); *State v. Reid*, 319 Or. 65, 872 P.2d 416, 419 (1994) ("The affidavit described a residence. Persons who might reasonably be expected to be found approaching the front door of a residence include a uniformed mail carrier or package delivery person, a volunteer soliciting donations for charitable purposes, or a neighbor seeking to borrow a cup of sugar...."). This is particularly true during daylight hours. *Kinney*, 698 N.E.2d at 56. In this case, there was no indication of the time of day police executed the warrant.

We acknowledge the private nature of the apartment in this case is a factor to support the issuance of an "all persons" warrant. This is because it is generally more likely that persons with no connection to criminal activity would be in a public place where criminal activity has been observed, as opposed to a private place. Nevertheless, a private place used as a residence also makes it likely that persons with no connection to criminal activity may be present. Furthermore, there was no evidence of the size of the apartment or whether other persons may have resided in the apartment.

To support an "all persons present" warrant, the police must present the magistrate with facts sufficient to permit a finding that the purpose of the residence was for the promotion of the criminal activity such that any person present is likely to be involved or to have evidence on their person. In order to fulfill this tall task, we reiterate our support for the factors identified by the *Nieves* court, and previously adopted by us in *Thomas*. Additionally, the warrant must be narrowly tailored to the facts which create the probable cause to search. The affidavit in this case did not fulfill these requirements, and therefore did not demonstrate probable cause to believe all persons present would likely be associated with the criminal activity. As a result, the portion of the warrant authorizing the search of "all persons" lacked the specificity required under our state and federal constitutions.

■■■■ We reiterate that "all persons" warrants are not per se unconstitutional. However, the individual liberty and privacy interests protected under our state and federal constitutions demand they be issued only under constrained circum-

stances, based on the standard and factors articulated in this opinion. This standard protects individual rights, while recognizing the interests of law enforcement. It does not mean, however, that police must know with certainty that all persons in the premises will possess evidence of criminal activity at the time of the search. It also does not mean that innocent people will never be caught in the middle of an "all persons" search. The Fourth Amendment only protects people "against unreasonable search and seizure." *State v. Hagen,* 258 Iowa 196, 137 N.W.2d 895, 899 (1965). Moreover, probable cause does not require absolute certainty, but a probable determination through the eye of a reasonably prudent person. *See State v. Seager,* 341 N.W.2d 420, 426–27 (Iowa 1983). Thus, we adhere to our practical common sense approach to the determination of probable cause, and rely upon the factors identified in this opinion to guide us in this determination.

### IV. Good Faith Exception.

■ In *State v. Cline,* filed contemporaneously with this opinion, we rejected the good faith exception to the exclusionary rule recognized in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *See State v. Cline,* 617 N.W.2d 277, 284 (Iowa 2000). Although *Cline* dealt with a search pursuant to statute, the rationale for rejecting the good faith exception under our state constitution applies with equal force to searches pursuant to a warrant. *Id.* Regardless of the good faith of police in relying upon a search warrant approved and issued by a judicial officer, the exclusionary rule remains the best way to protect the integrity of the judicial process and an individual's right under our state constitution to be free from government

conduct ultimately determined to be unlawful Accordingly, even if the search of Prior was conducted by officers within the framework of the good faith doctrine recognized in *Leon,* the exclusionary rule nevertheless applies to Prior's claim under our state constitution. We therefore reverse the district court and remand the case for further proceedings.

### V. Conclusion.

We conclude there was no probable cause for the issuance of an "all persons" warrant under the Fourth Amendment to the federal constitution and article I, section 8 of our state constitution. We also conclude the evidence seized from Prior as a result of the search must be excluded from trial based on our conclusion that the search violated our state constitution. We reverse and remand for further proceedings.

**REVERSED AND REMANDED.**

All justices concur except NEUMAN, J., who takes no part.