# IN THE COURT OF APPEALS OF IOWA

No. 18-0412
Filed April 17, 2019

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**AUSTIN MICHAEL MUILENBURG,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Clay County, Patrick M. Carr (motion to suppress) and Nancy L. Whittenburg (trial), Judges.

Austin Muilenburg appeals his convictions for three drug-related offenses. **AFFIRMED.**

Mark C. Smith, State Appellate Defender (until withdrawal), and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Mullins and Bower, JJ. Carr, S.J., takes no part.

**MULLINS, Judge.**

Austin Muilenburg appeals his convictions, following a trial on the minutes of evidence, of three drug-related offenses.  He argues: (1) the district court erred in denying his motion to suppress evidence obtained pursuant to a warrant, contending the warrant was unsupported by probable cause; (2) his trial counsel rendered ineffective assistance in failing to challenge the probable cause supporting the warrant, specifically the qualifications of the police officer who applied for the warrant; and (3) there was insufficient evidence to support his convictions of possession of cocaine and prescription drugs without a valid prescription.

I.      **Background Facts and Proceedings**

The following facts can be gleaned from the suppression record.  On April 3, 2017, Officer Leigh Winterboer of the Spencer Police Department observed an individual, identified as Alex Cody, drive by Winterboer's location.  Winterboer knew Cody's driver's license was either revoked or suspended, so Winterboer followed him after confirming Cody's lack of driving privileges with police dispatch.  Winterboer followed Cody to an apartment building, and before Winterboer could stop and make contact, he observed Cody exit his vehicle and enter the apartment building.  Winterboer asked Cody's passenger, who Cody left behind in his vehicle, about Cody's location.  The individual reported that Cody went inside the building to his apartment.  Winterboer knocked on the apartment door, and Muilenburg answered.  Winterboer noticed a faint odor of burnt marijuana emanating from the apartment at the time.  When Winterboer asked for Cody, Muilenburg closed the door; after a short time, Cody opened the door.  Winterboer placed Cody under

arrest. After Winterboer transported Cody to the police station, he filled out an application for a search warrant. The affidavit[1] in support of the warrant application stated, in pertinent part:

> On 4-3-17 at approximately 19:07 hrs. I (Officer Winterboer) observed [Cody] operating his [vehicle] in the 10 block of 4th St. S.W. [Cody] then got out of the vehicle when he observed a patrol vehicle and ran to the upstairs apartment, 12.5 4th Street S.W. leaving the passenger . . . standing outside Cody's vehicle. I asked [the passenger] where [Cody] went and he stated upstairs to [Cody's] apartment. As I went upstairs I knocked on the only door up the stairs. An unknown male answered the door and I asked him to get [Cody]. At this time I was able to detect a slight odor of burnt marijuana coming from inside the apartment. This unknown male then closed the door and [Cody] came back out shortly.
>
> Approximately 2 weeks prior to this incident a concerned citizen [called law enforcement to report an individual walking into the apartment known to be subject to a valid court order committing her to a hospital]. At this time I went to 12.5 4th St. S.W. and knocked on the upstairs apartment . . . . Another unidentified male came to the door and stated that [individual] did not live here. At this time I was able to detect the odor of burnt marijuana coming from his person. Upon speaking with this male he stated that [the requested individual] does not live here but [Cody] does.
>
> Based on my training and experience, I know that individuals who use illegal narcotics often keep the narcotics or items related to the consumption of narcotics in their personal property within their residence or garages, or on their persons. Based on the information provided, there is probable cause to believe that items indicating the possession and/or use of illegal narcotics and drug paraphernalia is present on the person of [Cody] or in the residence located at 12.5 4th St. S.W. in Spencer, Clay County, Iowa. A search of the above named person and residence is necessary to verify the facts in this case. I am therefore requesting that the Court allow me to search the person of [Cody] and in the residence located at 12.5 4th St. S.W. in Spencer, Clay County, Iowa and seize any property located.

At the time of the warrant application, Winterboer did not know the identity of the individuals who came to the door on either occasion. A judicial magistrate granted the warrant application.

---

[1] The affidavit is a part of and included in our references to the application.

The following facts can be gleaned from the minutes of evidence. After the magistrate granted the warrant application, local law enforcement, including Winterboer, executed the search warrant at the apartment. Winterboer knocked and announced their presence and ordered the door to be opened immediately. When no one complied after multiple announcements, officers breached the apartment. Winterboer encountered Muilenburg near the entry door. Muilenburg was compliant with Winterboer's commands to drop to the floor. Winterboer and other officers cleared and secured the apartment, and no one else was located in the apartment. Winterboer read the search warrant to Muilenburg. When asked, Muilenburg admitted he had a pipe and a bag of marijuana in his pockets, which were recovered. An officer read Muilenburg his *Miranda* rights and asked which bedroom was his. Muilenburg advised the south bedroom was his and the north bedroom was his roommate's. Muilenburg also stated Cody no longer lived at the apartment, as Muilenburg and his roommate recently kicked Cody out. Winterboer identified Muilenburg as the individual who answered the door earlier that day and the roommate as the individual who answered the door two weeks before.

Winterboer transported Muilenburg to the police station and then returned to the apartment to help with the search. When he returned, other officers were finishing their search of Muilenburg's bedroom. From the communal areas of the apartment and in the roommate's bedroom, police discovered multiple drug-related items. From Muilenburg's bedroom, officers seized numerous drug-related items, including a gym bag containing a "pipe/glass jar" with marijuana residue, multiple pipes, marijuana grinders, a small baggy containing cocaine, a water bong, a container with four individually wrapped bags of marijuana, a digital scale, cash,

and three orange or yellow pills. The pills were imprinted with "G 13 7" and, through an online database, police identified them as oxcarbazepine, which is only available by prescription. After preparing the charges against Muilenburg, Winterboer advised him of the possibility of forfeiture proceedings for cash that was also seized, at which time Muilenburg said he was taking responsibility for any items located in his bedroom.

Muilenburg was charged by trial information with: (1) possession with intent to manufacture or deliver marijuana, (2) possession of cocaine, and (3) possession of a prescription drug without a valid prescription. Muilenburg filed a pretrial motion to suppress the evidence obtained pursuant to the warrant. He argued the warrant lacked sufficient probable cause and the search exceeded the scope of the warrant. Following a hearing, during which only Winterboer testified, the court denied the motion, concluding there was sufficient probable cause to support the warrant's issuance and the warrant permitted the search of the entire apartment, including Muilenburg's bedroom, thus the police did not exceed the warrant's scope.

Muilenburg waived his right to a jury trial, and the matter proceeded to a bench trial on the minutes of evidence. The court found Muilenburg guilty as charged. Muilenburg appealed following the imposition of sentence.

## II.    Analysis

### A.    Motion to Suppress

#### 1.    Probable Cause

Muilenburg argues the district court erred in denying his motion to suppress evidence obtained pursuant to the search of his bedroom. Specifically, he argues

the search warrant for the apartment was not supported by probable cause and the search therefore violated his rights under the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution. "We review the denial of a motion to suppress on constitutional grounds de novo." *State v. Ingram*, 914 N.W.2d 794, 798 (Iowa 2018).

Warrants must be supported by probable cause. *State v. McNeal*, 867 N.W.2d 91, 99 (Iowa 2015).

> The test to determine whether there is probable cause to issue a search warrant is whether a person of reasonable prudence would believe a crime was committed on the premises to be searched or evidence of a crime could be located there. Probable cause to search requires a probability determination that (1) the items sought are connected to criminal activity and (2) the items sought will be found in the place to be searched.

*Id.* (altered for readability) (quoting *State v. Gogg*, 561 N.W.2d 360, 363 (Iowa 1997)). "The issuing judge 'is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information,' probable cause exists." *Gogg*, 561 N.W.2d at 363 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "In doing so, the judge may rely on 'reasonable, common sense inferences' from the information presented." *Id.* (quoting *State v. Green*, 540 N.W.2d 649, 655 (Iowa 1995)).

Appellate courts, "do not make an independent determination of probable cause; rather, we determine 'whether the issuing judge had a substantial basis for concluding probable cause existed.'" *McNeal*, 867 N.W.2d at 99 (quoting *Gogg*, 561 N.W.2d at 363). "In determining if evidence seized pursuant to a warrant should be suppressed, 'the affidavit of probable cause is interpreted in a common

sense, rather than a hypertechnical, manner.'" *Id.* at 100 (quoting *State v. Shanahan*, 712 N.W.2d 121, 132 (Iowa 2006)). "[W]e draw all reasonable inferences to support the judge's finding of probable cause and give great deference to the judge's finding." *Id.* (quoting *Gogg*, 561 N.W.2d at 364). Our consideration is limited to the information presented to the judge at the time of the warrant application. *Id.*

On our review of the information provided in the affidavit and application for the search warrant, we find there is a substantial basis for the issuing magistrate to conclude probable cause existed for the issuance of the search warrant.

### 2. Scope of Search

Muilenburg also contends that the officers exceeded the scope of the warrant by searching his bedroom. The warrant issued here states, in pertinent part:

> You are commanded to make immediate search of the persons of [Cody] and at the residence located at 12.5 4th St. S.W., Spencer, Clay County, Iowa, including the entire premises and curtilage, garages, sheds, outbuildings, and vehicles found to be under the control of the persons named herein where the items to be seized might be kept or hidden.

Generally, "the police must obtain a search warrant before entering or searching an area where a person has a reasonable expectation of privacy." *State v. Fleming*, 790 N.W.2d 560, 564 (Iowa 2010). "A search warrant is typically directed at a particular location or thing to be searched." *State v. Prior*, 617 N.W.2d 260, 263 (Iowa 2000). The warrant "can also authorize the search of both a place and persons." *Id.* If "this is done, the particularity requirement separately applies to the place to be searched and to each person to be searched." *Id.* "[T]he warrant

that is issued must describe the place or person to be searched with particularity." *Id.* An "officer must be able to reasonably ascertain and identify the place or person to be searched so that nothing is left to the discretion of the executing officer." *Id.* "[W]hen single, unrelated persons live together in a house [or apartment], the kitchen, living room, bathroom, hallways and entryways are communal space," in which there is no expectation of privacy. *Fleming*, 790 N.W.2d at 567. However, in those situations, "the individual bedrooms remain private" and there is "a reasonable expectation of privacy in an individual room rented within a single-family house" or apartment. *Id.* "An individual challenging the legality of a search has the burden of showing a legitimate expectation of privacy in the area searched." *Id.* at 564. We determine "whether a person has a legitimate expectation of privacy with respect to a certain area . . . on a case-by-case basis, considering the unique facts of each particular situation." *State v. Breuer*, 577 N.W.2d 41, 46 (Iowa 1998). If we find Muilenburg had a legitimate expectation of privacy, we must then determine if the search warrant authorized the search of his bedroom.

Winterboer testified that while executing the warrant, Muilenburg told him that Cody no longer lived there and there was a bed in the living room where Cody had slept. Further, Muilenburg identified the south bedroom as his and the north bedroom as his roommate's. The record does not establish in whose name the apartment was rented or whether Muilenburg paid any rent. The State does not, however, contest that the south bedroom was Muilenburg's or that he had an expectation of privacy. We will therefore assume he had a reasonable expectation of privacy and proceed to the scope of the search warrant.

In the execution of the warrant, the officers searched the entire premises. At the suppression hearing, Muilenburg argued, in executing the search warrant, the police exceeded the scope of the warrant when they searched his bedroom. He argued the warrant clause "found to be under the control of [Cody]" applied as a limitation to the entire premises and to vehicles under the control of Cody and therefore did not allow a search of premises not under the control of Cody— Muilenburg's bedroom. In denying Muilenburg's motion to suppress, the district court disagreed with that interpretation. The court found the clause only limited the search of the vehicles and concluded "the search of [Muilenburg]'s bedroom, being within the described apartment 'including the entire premises,' is well within the scope of the area to be searched." Muilenburg advances the same argument in this appeal that he raised in the district court.

In *Fleming*, a search warrant was issued to search the person and residence of someone named Nearman for marijuana and related items. 790 N.W.2d at 562. When executing the warrant, Nearman was found in a back room by the kitchen. *Id.* Three other men, including Fleming, were located in the dining and living room and were detained. *Id.* During a search of the entire residence, police found several pounds of marijuana near Nearman's bed and thousands of dollars inside his bedside table. *Id.* They also found a small quantity of marijuana in Fleming's bedroom. *Id.* Fleming filed a motion to suppress, claiming he rented the bedroom, he was in exclusive possession of the bedroom, he had a reasonable expectation of privacy in that room, and the search warrant did not authorize the search of his room. The supreme court explained:

There was no reason to believe that Nearman had access to that room or that he may have hidden drugs there. Further, there was no showing to the magistrate that Fleming was in possession of drugs. In ruling on Fleming's motion to suppress, the district court found Leckband and Lammers had informed police in their post *Miranda* interviews that Nearman had a roommate or roommates and told police they believed there was marijuana in all of the bedrooms in the residence. This information, however, was not contained in the search warrant application.

> [W]e have strictly limited the determination of whether probable cause exists to a consideration of only those facts reduced to writing that were actually presented to the issuing judge at the time the application for the warrant was made. Any additional facts adduced later cannot be considered.

*The only person named in the application as having possession of drugs was Nearman. Thus, there was no showing of probable cause to search Fleming's room. Therefore, the search of his room was warrantless.*

*Id.* at 567–68 (emphasis added) (citation omitted).

As our supreme court did in *Fleming*, we look to the warrant application to determine the basis for issuing the warrant and therefore bring clarity to the interpretation of the warrant that was executed. The application recites that, earlier on that day, Winterboer observed Cody driving a vehicle and when Cody saw the officer, Cody got out of the vehicle and went to the upstairs apartment at 12.5 4th St. S.W. In pursuit, the officer went upstairs to the apartment. In the supporting affidavit, Winterboer explained:

> As I went upstairs I knocked on the only door up the stairs. An unknown male answered the door and I asked him to get [Cody]. At this time I was able to detect a slight odor of burnt marijuana coming from inside the apartment. This unknown male then closed the door and [Cody] came back out shortly.

The affidavit also referenced another unidentified male Winterboer encountered at the door of the same apartment approximately two weeks earlier in connection with

an unrelated matter, and states: "[a]t this time I was able to detect the odor of burnt marijuana coming from his person." The affidavit concludes:

> [T]here is probable cause to believe that items indicating the possession and/or use of illegal narcotics and drug paraphernalia is present on the *person of Alexander Robert Cody . . . or in the residence* located at 12.5 4th St. S.W., in Spencer, Clay County, Iowa. *A search of the above named person and residence* is necessary to verify the facts in this case. I am therefore *requesting that the Court allow me to search the person of Alexander Robert Cody . . . and in the residence. . . .*

(Emphasis added.) Muilenburg argues *Fleming* supports his motion. His argument rests on the assertion that only the portion of the residence that had been used by Cody was covered by the warrant, and because Cody's name was included in the warrant, the warrant was limited to Cody. The State distinguishes *Fleming* and argues that Muilenburg was referenced in the warrant application, and the entire residence, including his bedroom, was a target of the warrant.[2]

The application references Cody and two unnamed individuals all associated with the residence from which the odor of marijuana emanated from on two separate occasions. The language of the warrant is directed separately at the person of Cody and at the described residence. Combining Winterboer's two visits to the apartment, the officer detected the odor of marijuana on each occasion and encountered Cody plus one person on one occasion and another person on the

---

[2] On appeal, the State also argues that law enforcement could search the bedroom pursuant to Iowa Code section 808.7 (2017), which allows "officers executing search warrants to protect themselves and others and safeguard evidence by securing the scene and searching persons there for weapons." *State v. Brown*, 905 N.W.2d 846, 862 (Iowa 2018). During the suppression hearing, the State did not argue plain view in connection with the safety sweep, but relied only on the language of the warrant permitting the search of the bedroom. Therefore, we find these arguments waived. *See State v. Baldon*, 829 N.W.2d 785, 789 (Iowa 2013); *see also State v. Ochoa*, 792 N.W.2d 260, 291 (Iowa 2010) ("An argument not made on an issue before the district court is ordinarily waived.").

earlier occasion. And, on the occasion Cody was found, Cody had only just arrived at the apartment, having been followed there by Winterboer. It is logical to infer that marijuana was already being smoked in the apartment before Cody arrived moments before Winterboer took him into custody. There was substantial evidence from which the magistrate could have found probable cause to believe there was marijuana in the apartment and that persons in the apartment other than Cody possessed marijuana.

We conclude the warrant authorized both a search of Cody and a search of the residence, each being separately and particularly identified. *See Prior*, 617 N.W.2d at 263. As explained above, unlike the *Fleming* case, the warrant application in this case clearly identified the person whose name appeared in the warrant and two separate people who were at the residence when the odor of marijuana emanated from the apartment. Muilenburg, the person Winterboer recognized from the apartment encounter earlier in the day, is one of the individuals not identified by name, but referenced in the application for the warrant. This is not a case in which the person claiming a violation of an expectation of privacy was never referenced in the application for the warrant, as was the case in *Fleming*. The application and warrant were directed not only at Cody, but also at the residence, which ended up being the residence of Muilenburg, one of the very persons referenced in the application. We conclude the search of Muilenburg's bedroom was within the scope of the warrant. Accordingly, we affirm the district court's denial of Muilenburg's motion to suppress.

B.    Ineffective Assistance of Counsel

Muilenburg claims his trial counsel was ineffective in failing to challenge the probable cause supporting the search warrant based on the officer's lack of qualifications.   He contends that the warrant application failed to provide the officer's qualifications to identify the odor of burnt marijuana, which serves as the basis for the warrant.

We review ineffective-assistance-of-counsel claims de novo.  *State v. Schlitter*, 881 N.W.2d 380, 388 (Iowa 2016).   Claimants must establish by a preponderance of the evidence both deficient performance and resulting prejudice. *Id.*; *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Lopez*, 907 N.W.2d 112, 116 (Iowa 2018).   To show deficient performance, a claimant "must demonstrate the attorney performed below the standard demanded of a reasonably competent attorney."  *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001).  "We presume defense counsel acted competently."  *Lopez*, 872 N.W.2d at 116.  "We assess counsel's performance 'objectively by determining whether [it] was reasonable, under prevailing professional norms, considering all the circumstances.'"  *Nguyen v. State*, 878 N.W.2d 744, 752 (Iowa 2016) (quoting *Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015)).   An applicant must also prove counsel's failure to perform an essential duty resulted in prejudice, which occurs when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Ledezma*, 626 N.W.2d at 143 (quoting *Strickland*, 466 U.S. at 690–91). "Reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome."  *Id.* (quoting *Strickland*, 466 U.S. at 694).

Based upon our review of the record, we find it inadequate to address this claim on appeal. We therefore preserve this claim for possible postconviction-relief proceedings. *See Shanahan*, 712 N.W.2d at 143.

C. Sufficiency of the Evidence

Finally, Muilenburg challenges the sufficiency of the evidence to support his convictions of possession of cocaine and prescription drugs without a valid prescription. We review a challenge to the sufficiency of evidence for correction of errors at law. *State v. Howse*, 875 N.W.2d 684, 688 (Iowa 2016). In our review, "[w]e 'consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence. We will uphold a verdict if substantial record evidence supports it.'" *Id.* (quoting *State v. Showens*, 845 N.W.2d 436, 439–40 (Iowa 2014)). "Evidence is substantial when 'a rational trier of fact could conceivably find the defendant guilty beyond a reasonable doubt." *Id.* (quoting *State v. Thomas*, 561 N.W.2d 37, 39 (Iowa 1997)). Evidence is not substantial if it raises only "suspicion, speculation, or conjecture." *Thomas*, 561 N.W.2d at 39 (quoting *State v. Randle*, 555 N.W.2d 666, 671 (Iowa 1996)).

Muilenburg was charged with possession of cocaine in violation of Iowa Code section 124.401(5), which provides "[i]t is unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly from, or pursuant to, a valid prescription . . . or except as otherwise authorized by this chapter." To prove unlawful possession, the State must prove that Muilenburg "exercised dominion and control over the contraband,

had knowledge of the contraband's presence, and had knowledge the material was a narcotic." *State v. Maxwell*, 743 N.W.2d 185, 193 (Iowa 2008).

Here, Muilenburg seemingly does not contest the first two elements of possession, as he identified the south bedroom was his and he took responsibility for anything found within it. Instead, he focuses his arguments on the "knowledge the material was a narcotic" element. He contends the minutes of evidence contained insufficient information about his knowledge of the narcotic character of the drug. "Knowledge of the narcotic character . . . of the drug, . . . may be shown by the conduct, behavior and declarations of the accused." *State v. Reeves*, 209 N.W.2d 18, 22 (Iowa 1973). On our review, and viewing the evidence in the light most favorable to the State, we find the evidence sufficient for the district court to reasonably infer that Muilenburg had knowledge of the cocaine's narcotic character based upon his constructive possession and exclusive control of his bedroom and the controlled substances found therein.

The State also charged Muilenburg with possession of a prescription drug without a valid prescription, in violation of Iowa Code section 155A.21. Section 155A.21 provides "[a] person found in possession of a drug or device limited to dispensation by prescription, unless the drug or device was so lawfully dispensed, commits a serious misdemeanor." A conviction requires the State to establish Muilenburg "(1) was found in possession, (2) of a prescription drug, and (3) the drug was not lawfully dispensed to him." *State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011).

Muilenburg does not contest that the pills were found in his possession, that the pills were oxcarbazepine, which requires a prescription, or that the pills were

not lawfully dispensed to him. He instead argues that the State failed to prove that he had knowledge of the nature of the pills. Knowledge of the nature of the pills is not an element the State was required to prove. *See* Iowa Code § 155A.21. Because Muilenburg does not challenge the establishment of the elements of the offense, we find there is sufficient evidence to support his conviction under section 155A.21.

## III.    Conclusion

We find there was a substantial basis for the issuing magistrate to conclude probable cause existed for the issuance of the search warrant and the search of Muilenburg's bedroom did not exceed the scope of the warrant. Accordingly, we affirm the district court's denial of Muilenburg's motion to suppress. We additionally find there is sufficient evidence to support Muilenburg's convictions for possession of cocaine and prescription drugs without a valid prescription. We preserve Muilenburg's ineffective-assistance-of-counsel claim for possible postconviction-relief proceedings.

**AFFIRMED.**

Bower, J., concurs; Tabor, P.J., concurs specially.

**TABOR, Presiding Judge** (concurring specially).

I agree with the panel's decision to affirm Muilenburg's drug-related convictions. I write separately because I disagree with the majority's assertion that knowledge of the nature of the prescription drugs is not an element of Iowa Code section 155A.21(1) (2017). That offense has three elements: (1) a person is "found in possession" of a drug, (2) the drug is dispensed only by prescription, and (3) the person did not have a lawful prescription. *See State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011). Proof of unlawful "possession" requires the State to establish "beyond a reasonable doubt that the accused knew of the presence of such substances on premises occupied and controlled by him, either exclusively or jointly with others *and the nature of the material*." *See State v. Reeves*, 209 N.W.2d 18, 23 (Iowa 1973) (emphasis added).

*Reeves* interpreted a provision making it unlawful for a person to "possess any depressant, stimulant or counterfeit drug unless the drug was obtained upon a valid prescription." *See* Iowa Code § 204A.3(2) (1971). Although the 1971 statute did not include the terms "knowingly" or "intentionally", the *Reeves* court nonetheless expected the State to prove the accused had knowledge "the material was a narcotic." *See Reeves*, 209 N.W.2d at 21. I believe the same proof requirement applies today to the term "possession" in section 155A.21(1).

But Muilenburg does not dispute the pills in his bedroom required a prescription and were not lawfully dispensed to him. Therefore, even under the definition of unlawful possession adopted in *Reeves*, I agree with the district court that the State established Muilenburg had the ability to exercise dominion or

control over items in his bedroom and, therefore, was in constructive "possession" of the pills.