**STATE of Iowa, Appellant,**

v.

**James Craig DAVIS, Appellee.**

**No. 03–0888.**

Supreme Court of Iowa.

May 12, 2004.

Thomas J. Miller, Attorney General, Mary E. Tabor, Assistant Attorney General, and Alan M. Wilson, County Attorney, for appellant.

Allan C. Orsborn and Ryan J. Mitchell of Orsborn, Bauerle, Milani & Grothe, L.L.P., Ottumwa, for appellee.

WIGGINS, Justice.

An Iowa trial information charged defendant, James C. Davis, a Missouri resident, with crimes he allegedly committed on property that spanned the Iowa–Missouri border. A Missouri judge, based on the application of a Missouri prosecutor and an Iowa sheriff, issued a search warrant for defendant's property, which was located in Missouri. The defendant moved to suppress the evidence seized because a defect existed in the application for the search warrant. The State resisted the motion to suppress contending there was no defect in the application, and if there was a defect, the good faith exception to the exclusionary rule would allow the admission of the evidence. The district court concluded there was a defect in the application making the search warrant invalid. The district court further concluded the Iowa courts do not recognize the good

faith exception to the exclusionary rule and sustained defendant's motion to suppress. On appeal, we find that the good faith exception to the exclusionary rule as recognized by Missouri is applicable to this Iowa prosecution and reverse.

## I. Background Facts and Proceedings.

Defendant is a Missouri resident. After the defendant's father died, defendant's brother, Bobby Davis, and defendant's mother, June Davis, made over forty complaints to law enforcement officers in Wayne County, Iowa, concerning acts of vandalism to their property, which spans the Iowa–Missouri border. The complaints included fences being cut multiple times, fires being set on the property, and property missing from the premises.

Because the Davis property was remote and five miles in length, it was difficult for the police to investigate. Regardless, they used surveillance at times, but no leads formed because of their efforts. On August 23, 2001, the authorities received a break in the case when an anonymous informant called to report that defendant had just left a farm field in the area where the vandalism occurred. The caller informed the police that defendant was driving a four-wheel all terrain vehicle and carrying several items in its front basket. Matt Davis, a family member, corroborated the anonymous tip by reporting the same incident.

Accordingly, the police investigation focused on defendant, who was involved in an ongoing dispute with his brother and mother over his father's estate. The next logical step in the investigation was to search defendant's premises in Putnam County, Missouri, for any evidence that would connect him with the crimes. On September 6, 2001, Sheriff Davis of Wayne County, Iowa, met with Putnam County,

Missouri, prosecutor, James Garrett, to obtain a warrant to search defendant's premises. Garrett prepared the application for the search warrant. The application stated Garrett was duly sworn when he signed the application, but it was not verified. Sheriff Davis testified he did not see anyone administer the oath to Garrett when Garrett signed the application. Attached to the application was an affidavit, signed by Sheriff Davis. Garrett, who was also a notary public, verified Sheriff Davis's affidavit. Sheriff Davis presented the application to a judge from the associate circuit court of Putnam County, Missouri. After reviewing the application, the court concluded, "there is probable cause to believe the allegations of the [application] to be true and probable cause for the issuance of a search warrant herein."

The search of defendant's property took place on September 7, 2001. Sheriff Jason Knight, from Putnam County, Missouri, served the warrant and participated in the search. Iowa law enforcement authorities also participated in the search. The law enforcement personnel seized many items, including a saw, vice grips, bolt cutters, and wire cutters. After the search, Sheriff Knight gave the seized property to the Iowa law enforcement authorities for processing. The Iowa Department of Criminal Investigation (DCI) made lead impressions of the cutting instruments and compared the impressions with the wire samples from the cut fences, but the results were inconclusive. Upon defendant's request, the Iowa authorities returned the seized items to the defendant. After the authorities returned the items to the defendant, a criminologist from the DCI found wire samples that he had failed to compare with the impressions made from the wire cutters seized pursuant to the first warrant. Sheriff Davis still had the impressions in his pos-

session and returned them to the DCI. The DCI made a positive comparison with the lead impressions and the wire samples.

On this basis, Sheriff Davis secured a second warrant, following the same procedure as was followed in obtaining the first warrant. On May 30, 2002, Garrett prepared the application for the second search warrant. The application stated Garrett was duly sworn when he signed the application, but it was not verified. Once again, Sheriff Davis did not see anyone administer the oath to Garrett. Attached to the second application was an affidavit signed by Sheriff Davis. Garrett, who was also a notary public, verified Sheriff Davis's affidavit. The second application essentially listed the same tools as were seized pursuant to the first search warrant. Additionally, the second application contained information about a cattle head gate, which someone took from the property in January 2002. The same judge, who approved the issuance of the first warrant, approved the issuance of the second warrant. The judge based her finding of probable cause partly on the DCI's report, which found a positive comparison between the lead impressions and the wire samples. Authorities from Iowa and Missouri executed the search warrant on May 31, 2002. The sheriff listed the head gate, bolt cutters, tin snips, and pliers in the inventory of items seized during the search.

A trial information filed in the Iowa district court charged defendant with two counts of criminal mischief and one count of ongoing criminal conduct. Defendant pled not guilty to the charges and moved to suppress the evidence seized during the searches of his property. In his motion, the defendant argued numerous grounds for suppression of the evidence. The State filed a resistance to defendant's motion. On May 5, 2003, the district court granted the motion to suppress. The district court noted that pursuant to Missouri law, "any peace officer or prosecuting attorney" may apply for a search warrant. When Sheriff Davis went outside his jurisdiction, however, he was no longer a peace officer and therefore, could not make an application for a search warrant. Although the Putnam County prosecutor also signed the application for the search warrant, he was not under oath at the time, making his application unverified. Pursuant to Missouri law, a court cannot issue a search warrant based on an unverified application. The district court next concluded that since Iowa law does not recognize a good faith exception to the exclusionary rule for officers who believe they are executing a valid search warrant, the court had no other choice but to suppress the evidence. The State sought discretionary review of the suppression ruling, and this court granted the State's application.

## II. Issues.

The State claims the procedure used by the Missouri prosecutor complied with the Missouri warrant statute governing the issuance of search warrants. In the alternative, if a defect occurred in the application process, the good faith exception to the exclusionary rule as applied by the Missouri courts does not require the suppression of the evidence. Defendant argues otherwise in his brief. He also claims the affidavit to the September 2001 application lacked probable cause to believe evidence of a crime might be located on the property to be searched, thus the Missouri court should not have issued the first search warrant.

## III. Standard of Review.

■■■ Because the defendant's challenge to the finding of probable cause by the court when it issued the first warrant

is on constitutional grounds, our review is de novo. *State v. Seager,* 571 N.W.2d 204, 207 (Iowa 1997). We do not make an independent determination of probable cause, but only determine whether the issuing court had a substantial basis for finding the existence of probable cause. *State v. Green,* 540 N.W.2d 649, 655 (Iowa 1995). In determining whether a substantial basis existed for finding probable cause, we are limited to consideration of only that information, reduced to writing, which the applicant presented to the court at the time of the application for the warrant. *State v. Gogg,* 561 N.W.2d 360, 363 (Iowa 1997).

■ The challenge to the statutory sufficiency of the application for issuance of the warrant is for correction of errors at law. *State v. Beckett,* 532 N.W.2d 751, 753 (Iowa 1995).

### IV. The Challenge to the Finding of Probable Cause.

■ We use the totality of the circumstances standard enunciated in *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983), to determine whether probable cause has been established for the issuance of a search warrant. The existence of probable cause to search a particular area depends on whether a person of reasonable prudence would believe that evidence of a crime might be located on the premises to be searched. *Gogg,* 561 N.W.2d at 363. The task of the judge issuing the search warrant is "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit" presented to the judge, there is a fair probability that law enforcement authorities will find evidence of a crime at a particular place. *Gates,* 462 U.S. at 238–39, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. A finding of probable cause depends on "a nexus be-

tween criminal activity, the things to be seized and the place to be searched." *Green,* 540 N.W.2d at 655. In making that determination, the judge may rely on reasonable, common-sense inferences from the information presented. *Id.* Close questions are resolved in favor of the validation of the warrant. *State v. Poulin,* 620 N.W.2d 287, 290 (Iowa 2000). In reviewing the court's determination, we draw all reasonable inferences to support a court's finding of probable cause. *State v. Padavich,* 536 N.W.2d 743, 747 (Iowa 1995). Considering the totality of the circumstances, the affidavit supported the Missouri court's conclusion that probable cause existed for the issuance of the search warrant permitting the search of defendant's property.

■ The verified affidavit signed by Sheriff Davis attached to the application for the search warrant stated that some person or unknown persons committed approximately forty acts of vandalism to the Iowa property. These acts included numerous field fences being cut, fires being set, and theft of property. These acts of vandalism revolved around a dispute over the Clifford Davis estate.

The affidavit disclosed that on July 24, 2001, the sheriff investigated fence cutting on the vandalized property. Someone made numerous cuts in the fence and pulled fence posts from the ground. The damaged fence was located in a remote area adjacent to the west side of defendant's property. Access to the area could only be made with the aid of an ATV four-wheeler through the defendant's property or by a dirt road on the Iowa–Missouri state line. At the time of the report, the sheriff discovered recent ATV tracks in the defendant's field.

The affidavit also revealed that on August 23, 2001, a confidential informant observed the defendant trespassing on the

informant's property, which borders the property where the vandalism took place. The informant observed the defendant driving an ATV four-wheeler at the time. The informant advised the officers that the defendant had no legitimate basis to be in this area as he was trespassing on the informant's property. When confronted by the informant, the defendant appeared to be surprised. The informant observed numerous items in the basket of the ATV, but was unable to identify any of these items. The informant noted the probate court had scheduled a hearing in the estate matter and that the acts of vandalism occurred at or near the time of the hearing. The sheriff confirmed in the affidavit that the confidential informant had provided reliable information to law enforcement in the past concerning numerous acts of vandalism that had occurred.

Shortly after the informant contacted the authorities, Matt Davis, who is on the same side of the family dispute as the defendant, called the Wayne County Sheriff's office and reported that he had observed the defendant in the area of the vandalized property, and that he and his father did not want to be blamed for anything that was done that day. Matt Davis also revealed to the sheriff that someone had told him the defendant was involved in earlier property damage at the vandalized premises.

On August 26, 2001, Sheriff Davis investigated an arson complaint, which occurred on the vandalized property. The sheriff determined two bales of hay had been deliberately set on fire. These bales were located at the entrance to the field located on the state-line road where the confidential informant had seen the defendant turning three days earlier.

This information was sufficient for the judge to find probable cause existed that defendant was involved in these crimes, and there may be evidence of such crimes on defendant's premises.

## V. The Challenge to the Search Warrant Application.

The statute applicable to the issuance of search warrants in Missouri provides that "[a]ny peace officer or prosecuting attorney may make application ... for the issuance of a search warrant. Mo.Rev.Stat. § 542.276(1) (2001). The application is required to 'be verified by the oath or affirmation of the applicant.'" Mo.Rev.Stat. § 542.276.2(6). As used in section 542.276(1), "the term 'peace officer' means a police officer, member of the highway patrol to the extent otherwise permitted by law to conduct searches, sheriff or deputy sheriff." Mo.Rev.Stat. § 542.261. Finally, a written application for a search warrant that is not verified is invalid. Mo. Rev.Stat. § 542.276.10(2).

The district court determined the warrants were invalid because Sheriff Davis did not have law enforcement power in Missouri and therefore, did not have authority to make the applications for the search warrants. The court further concluded that even though the Missouri prosecutor did have authority to make the applications for the search warrants, he failed to have his statements in the applications verified by oath or affirmation. Therefore, the search warrants were invalid because the applications did not meet the statutory requirements as provided by Missouri law. On appeal, the State argues the district court erred because the Missouri statutes allowed an Iowa peace officer to make the applications for the search warrants with the cooperation of a Missouri prosecutor who signed the applications. The defendant responds to this argument by asserting that the Missouri statutes do not allow an Iowa peace officer to make applications for search warrants.

He further argues that because the prosecutor did not verify the applications for the search warrants by oath or affirmation, the warrants were invalid. Neither side has provided us with Missouri law squarely on point. Although both arguments have some merit, we find it unnecessary to decide how a Missouri appellate court would decide this issue, because of the following discussion regarding the good faith exception to the exclusionary rule.

The Supreme Court adopted a good faith exception to the Fourth Amendment exclusionary rule when an officer executing a search warrant relies on the warrant in good faith, even though a court later holds the warrant to be invalid. *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677, 698 (1984). In holding the good faith exception did not apply to this search, the district court relied on *State v. Prior*, 617 N.W.2d 260 (Iowa 2000). In *Prior* we applied the exclusionary rule because the warrant lacked probable cause violating the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution. 617 N.W.2d at 263–68. In *Prior* we rejected the good faith exception as

> the best way to protect the integrity of the judicial process and an individual's right under our state constitution to be free from government conduct ultimately determined to be unlawful. Accordingly, even if the search of [defendant] was conducted by officers within the framework of the good faith doctrine recognized in *Leon*, the exclusionary rule nevertheless applies to [defendant's] claim under our state constitution.

*Id.* at 268.

The defects of which the defendant complains in this case do not rise to the level of constitutional defects, but are defects based upon the statutory requirements for an application for a warrant. Article I, section 8 of the Iowa Constitution requires that "no warrant shall issue but on probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the persons and things to be seized." Iowa Const. art. I, § 8. A judicial officer issued these search warrants on probable cause, supported by the oath of Sheriff Davis, particularly describing the place to be searched, and the items to be seized. These searches did not violate defendant's constitutional rights as guaranteed by the Iowa Constitution. The district court's reliance on *Prior* was misplaced.

This, however, does not complete our analysis. Our court has rejected the good faith exception when an application for a search warrant failed to meet the statutory requirements for issuance. *Beckett*, 532 N.W.2d at 755. In *Beckett* we rejected the good faith exception because recognizing it would effectively defeat the purpose of Iowa Code section 808.3 and make a failure to comply with the statute of no consequence. *Id.*

The Missouri courts have taken the opposite view and have adopted the good faith exception to the exclusionary rule when a defect exists in the application for a warrant. *State v. Brown*, 708 S.W.2d 140, 145 (Mo.1986); *State v. Sweeney*, 701 S.W.2d 420, 426 (Mo.1985). In *Sweeney* the Missouri Supreme Court stated:

> Assuming arguendo the warrant might be found to be invalid under the statute, the Fourth Amendment exclusionary rule would not bar the prosecution's introduction of evidence seized by officers who in this case acted in reasonable reliance on a search warrant issued by a detached and neutral judge. We do not find that the issuing judge abandoned his judicial role in a manner that would require invocation of the exclusionary rule; nor was the warrant so facially

deficient as to preclude the same. Finally, the circumstances indicated that the officers were justified in their objective good faith reliance on this warrant.

*Sweeney*, 701 S.W.2d at 426 (citations omitted). In *Brown* the Missouri Supreme Court reaffirmed its position stating:

> Assuming arguendo the search warrant was invalid because it was issued without a verified application in proper form, should the items seized pursuant to that arguably invalid warrant have been excluded in the prosecution's case-in-chief? In [*Leon*] the United States Supreme Court provided for a good-faith exception to the traditional Fourth Amendment exclusionary rule. Noting that the exclusionary rule is not an express provision of the Fourth Amendment but instead is a judicially created remedy, the Court, evaluating the costs and benefits of suppressing reliable physical evidence, came down on the side of admitting inherently trustworthy tangible evidence rather than upon the side of uncertain deterrence of police misconduct. The teaching of *Leon's* good-faith exception is that evidence seized pursuant to a warrant issued by a detached and neutral magistrate should not be excluded, irrespective of the actual validity of the warrant, so long as the officer conducting the search acted in objectively reasonable reliance on that warrant.

*Brown*, 708 S.W.2d at 145 (citations omitted).

■ In Iowa we refuse to apply the good faith exception to the exclusionary rule when a defect exists in the application for a warrant to protect the integrity of the statutes passed by our legislature. The Missouri courts, on the other hand, do not take the same approach in protecting their statutes. The search warrants met all the requirements of the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution because they were issued on probable cause, supported by the oath of Sheriff Davis, and particularly described the place to be searched and the things to be seized. We do not have any concerns regarding the trustworthiness of the evidence seized. We see no reason to give greater protection to the integrity of the Missouri statutes than the Missouri courts do under similar circumstances. For these reasons, we believe that the good faith exception as recognized by the Missouri courts applies to the Missouri searches, and the district court should have overruled defendant's motion to suppress.

## VI. Disposition.

Because we find that the good faith exception to the exclusionary rule as recognized by Missouri applies to the Missouri search warrants, defendant's motion to suppress should have been overruled. Therefore, we reverse the order of the district court and remand for further proceedings consistent with this opinion.

**REVERSED AND CASE REMANDED.**