# IN THE COURT OF APPEALS OF IOWA

No. 14-1124
Filed June 24, 2015

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**STEVEN J. REES,**
　　　　Defendant-Appellant.
_____

Appeal from the Iowa District Court for Webster County, Thomas J. Bice and Kurt L. Wilke, Judges.

A defendant appeals following his convictions of sexual exploitation of a minor and invasion of privacy. **CONVICTIONS AFFIRMED, SENTENCE VACATED, AND REMANDED FOR RESENTENCING.**

Mark C. Smith, State Appellate Defender, and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kelli Huser and Andrew Prosser, Assistant Attorneys General, Jennifer Benson, County Attorney, and Cori Kuhn Coleman, Former County Attorney, for appellee.

Considered by Vogel, P.J., Potterfield, J., and Goodhue, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**GOODHUE, S.J.**

Steven J. Rees has appealed from the jury's verdict of guilty for sexual exploitation of a minor and invasion of privacy, and from the sentences imposed thereupon. We affirm the jury's verdict but remand the matter for resentencing.

## I. Facts and Course of Proceedings

Steven J. Rees was a church youth group leader and the victim, J.K., was a sixteen year-old member of the group. Rees frequently provided J.K. a ride to school and to church. Rees operated a business called DAC Security Systems. J.K. asked if Rees knew of anything that she could do to earn extra money. Rees told her that she could possibly do poses for a modeling company by the name of Rose Industries, operated by Brenda Miller. Rees arranged a photo shoot at his shop. J.K. came to the shop with a girlfriend, and Rees provided clothes for the girls and took the pictures. He subsequently paid J.K. $300 and told her that she had been approved as a model but her friend had not.

Rees then arranged a second photo shoot and had her pull down a swimsuit so low that she felt uncomfortable, took off the top of the suit, and covered her breasts with her arms or hands. A third photo shoot was arranged that was initially to be at Rose Industries at Eagle Grove, but Rees advised that Miller had sold her business and the photos would be taken on a nearby beach. A girlfriend of J.K.'s accompanied them to where the photos were taken by Rees. They then went back to the shop where more photos were taken. J.K. wore string bikinis for the photos at the beach and was told to pull down her swimsuit to the point that she believed her vagina almost showed and her buttocks were clearly displayed. Photos were taken with a covering so light over her breasts

that J.K. believed the nipples of her breasts could be seen through the clothing that Rees had given her to wear.  During the second and third photo shoots Rees made comments to J.K. that indicated he was sexually aroused and asked her to assume positions that would enhance his arousal.

After these incidents were reported to the police, a search warrant was obtained and a video camera was found in the bathroom at Rees's shop where the girls had been directed to change.  The video recording showed J.K. changing outfits in the bathroom and showed her naked at times.  The victim did not know that a video had been taken of her changing in the bathroom. Women's clothes, including swimsuits and multiple pictures of J.K. that Rees had taken, were discovered at his shop.  The existence of Rose Industries and Brenda Miller could not be established and appear to be a fabrication.

Rees filed a motion to suppress all items found at the shop as a result of the search warrant, but it was overruled.  At trial the court closed the courtroom for a little less than twenty minutes while the court viewed Rees's video of J.K. undressing in the bathroom.  Rees objected to the temporary closure of the courtroom, but his objection was overruled.  Rees made a motion for judgment of acquittal as to both charges, but his motion was overruled.  Rees contends that each of the three above rulings was made in error.

Rees was found guilty of both charges and was sentenced to ten years and one year, respectively, on the two counts with the sentences to run concurrently.  Rees had no prior record but was denied probation.

Rees contends the court illegally took into consideration his election to stand trial rather than plead guilty and otherwise abused its discretion in pronouncing sentence.

## II. Preservation of Error

Error preservation is generally considered present when the issue to be reviewed has been raised and ruled on by the district court. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Each of the first three matters relate to issues raised and ruled on by the trial court. Error has been preserved. A claim of a sentencing error is not subject to the ordinary rules of error preservation and may be raised for the first time on appeal. *State v. Shearon*, 660 N.W.2d 52, 57 (Iowa 2003).

## III. Discussion and Standard of Review as to Each Issue Raised

### A. Motion to Suppress

A search raises constitutional issues and is therefore reviewable de novo. *State v. Pals*, 805 N.W.2d 767, 771 (Iowa 2011). Probable cause must be presented to the magistrate to support issuance of a search warrant. *State v. Davis*, 679 N.W.2d 651, 656 (Iowa 2004). The reviewing court is limited to the written information before the magistrate at the time of the issuance, but it is to draw all reasonable inferences to support the magistrate's finding of probable cause. *Id.* The test is the determination of whether the magistrate had a substantial basis for issuing the warrant and not a redetermination of probable cause. *Id.* Nevertheless, a reviewing court's duty is to make certain that the magistrate performed his or her function in a neutral and detached manner. *State v. Swaim*, 412 N.W.2d 568, 571 (Iowa 1987).

The application on which the search warrant was issued stated that J.K. had related Rees had taken pictures exposing her buttocks and the nipples of her breasts. Such exposure constitutes nudity. *See State v. Hunter*, 550 N.W.2d 460, 465 (Iowa 1996) (noting the common meaning of the word "nudity" includes exposure of the breasts, buttocks, or genitalia), *overruled on other grounds by State v. Robinson*, 618 N.W.2d 306 (Iowa 2000). It is unlawful to cause a minor to engage in a prohibited sexual act. Iowa Code § 728.12(1) (2013). A prohibited sexual act is defined as nudity of a minor for the purpose of arousing or satisfying the sexual desires of a person. *Id.* § 728.1(6)(g). The warrant application recited that Rees had told her to look sexy and seductive, and show her body in a manner to excite men. The warrant application also established that the existence of Brenda Miller and Rose Industries appeared to be a fabrication. A substantial basis existed for a reasonable person to believe prohibited photos would be found at Rees's shop. *See Davis*, 679 N.W.2d at 656 ("The existence of probable cause to search a particular area depends on whether a person of reasonable prudence would believe that evidence of a crime might be located on the premises to be searched."). The search warrant was legally issued.

B. Closure of the Proceedings to the Public

A public trial is a constitutional right; therefore, the court's review is de novo. *State v. Schultzen*, 522 N.W.2d 833, 835-36 (Iowa 1994). In order for a trial, or part thereof, not to be open to the public, four criteria must be met: (1) the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced; (2) the closure must be no broader than necessary to

protect that interest; (3) the trial court must consider reasonable alternatives to closing the proceedings; and (4) the trial court must make findings adequate to support the closure. *Id.* at 836.

The State's overriding interest was to protect J.K.'s right to privacy as opposed to showing her changing clothes and in a naked condition to anyone who chose to be present in the courtroom. The closure was limited to the twenty minutes when J.K. was shown changing her clothes. At trial Rees, through counsel, agreed the video should not be publicly viewed but suggested using a video or TV screen close to the jury. The trial court considered Rees's alternative but was concerned that it would be difficult to keep the public from viewing the screen given the courtroom layout. Furthermore, such a restriction and limitation, if effective in its attempt to avoid public viewing, would have been equal to closing the courtroom while the video was shown. The court's ruling and finding regarding the first three criteria constitute the fourth requirement. The State's interest and J.K.'s interest in her privacy outweighed Rees's right to have his twenty-minute, surreptitiously-obtained video of the victim's nakedness shown to the public.

C. Failure to Grant Rees's Motion for a Judgment of Acquittal

A trial court's denial of a defendant's motion for judgment of acquittal is reviewed for corrections of errors of law. *State v. Serrato*, 787 N.W.2d 462, 465 (Iowa 2010). A guilty verdict must be supported by substantial evidence. *Id.* Substantial evidence exists if it is such that a rational trier of fact could find the accused guilty beyond a reasonable doubt. *Id.* In reviewing a ruling on a motion

for judgment of acquittal, the evidence is viewed in the light most favorable to the State. *Id.*

Rees contends there was insufficient evidence that his activities were intended to satisfy, arouse, or gratify sexual desires, an element of both charges of which he was found guilty. *See* Iowa Code §§ 709.21(1), 728.1(7)(g), 728.12(1). Intent is frequently not susceptible to direct proof and often can only be established by circumstantial evidence and the inferences that can be drawn from it. *State v. Olson*, 373 N.W.2d 135, 136 (Iowa 1985).

There was adequate evidence for the jury to infer that Rees's objective was to satisfy his sexual desires. Rees made comments to J.K. that indicated he was sexually aroused and requested a change in her position that would enhance his arousal. No other explanation for having a video camera in the bathroom where J.K. was dressing was given. Rees's payment of money to J.K. and, apparently, the whole story about Rose Industries and Brenda Miller were designed to put the victim in a location where Rees could video her in a naked condition.

D. Abuse of Discretion in Sentencing

In a broader sense, sentencing is ultimately reviewed for corrections of law. *State v. Valin*, 724 N.W.2d 440, 444 (Iowa 2006). However, where the sentence imposed is within the statutory framework available to the sentencing court, an abuse of discretion can constitute an error of law. *Id.* It is in that context that Rees's sentence will be reviewed.

A sentence within the statutory framework is clothed with a strong presumption in its favor. *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002).

An abuse of discretion will be found only when the court's discretion was exercised on grounds or reasons clearly untenable. *Id.*

Rees contends that factors favorable to justifying probation were not considered by the trial court. Rees had no prior criminal history, was the owner of a business, and was married. A psychosexual evaluation showed him to have a low to moderate risk of recidivism. The presentence investigation (PSI) report recommends supervised probation and indicates Rees is amenable to treatment in a community-based correctional facility.

The court stated it had read the PSI and considered Rees's counsel's statement, and noted that the psychosexual assessment indicated a low risk of recidivism. The sentencing court is not required to restate each claim of mitigation. *State v. Boltz*, 542 N.W.2d 9, 11 (Iowa Ct. App. 1995).

Rees, in effect, contends that the court placed too much importance on the nature of the offense. The sentencing court has the right to place greater importance on one sentencing consideration than another. *State v. Wright*, 340 N.W.2d 590, 593 (Iowa 1983). The sentencing court gave adequate consideration to the mitigating factors that support probation and did not overemphasize the crime committed. No abuse of discretion occurred.

However, that determination does not dispose of Rees's claim that the sentencing court considered an improper factor—his decision not to plead guilty. In sentencing Rees, the trial court stated,

> What I find particularly bothersome is something Mr. Prosser brought up about the fact that the defendant was, in fact, offered quite a lenient situation with probation, if I'm not mistaken, but rejected contending from day one that he was not guilty of this offense.

This court was taken aback during the course of trial seeing that it couldn't understand any real defense at all in this case. I mean it just—it just baffled me that—a plea had not been entered before the trial because there was just nothing there to lend itself to the defendant's defense.

When a sentence is imposed for reasons that violate a defendant's right to assert the constitutional right to stand trial, the sentence will not be permitted to stand. *State v. Drake*, 224 N.W.2d 476, 479 (Iowa 1974). In *Drake* the matter was sent back for resentencing when the court stated,

I am inclined to agree with you, Mr. Rosenberg, that this is a case where this lady would probably have been given probation had she entered a plea of guilty, but . . . my feeling is that the first step in rehabilitation is a willingness to admit you're wrong and to come in and offer to straighten the matter out entirely. She chose not to do that . . . .

*Id.*

In *State v. Nichols*, 247 N.W.2d 249, 250 (Iowa 1976), the court—after noting a rather far-fetched defense that the defendant had offered—stated,

And the rather glib way that you told that on the witness stand, I might be willing to go along with these recommendations. In other words I think I'm saying to you, had you said "Okay, I've done this and I'm willing now to face the consequences of my acts" you might then be able to persuade the court that sufficient turn-around had occurred, that you should be afforded another chance. However, under the circumstances under the record here I just don't believe I can do that.

Although the supreme court determined the record disclosed circumstances warranting the sentence imposed, it remanded the matter for resentencing because an impermissible consideration—the defendant's exercise of the fundamental and constitutional right of requiring the State to prove guilt at trial and the right to raise defenses thereto—may have been employed in imposing the sentence. *Nichols*, 247 N.W.2d at 255-56.

Here, the State contends that the sentencing court was only commenting on Rees's lack of remorse.  Anytime a defendant exercises his right against self-incrimination, pleads not guilty, and insists upon trial, it can be inferred that the defendant is not repentant.  *Id.* at 253.  Our criminal justice system has resolved the inherent conflict by preserving the right against self-incrimination and the right to trial as absolute rights, and holding the time for repentance is after trial.  *Id.*

We cannot make a rational distinction between the sentencing court's comments in either *Drake* or *Nichols* and the court's comments in the instant case.  Admittedly there is a sharp contrast between what the State does in plea bargaining and what the court is permitted to consider in sentencing, but it is a sharp and clear line that is intended to preserve the integrity of the court.  This matter is affirmed but remanded for resentencing.

**CONVICTIONS AFFIRMED, SENTENCE VACATED, AND REMANDED FOR RESENTENCING.**