# IN THE COURT OF APPEALS OF IOWA

No. 16-1183
Filed December 20, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**LAMONT MONTEE WILLIAMS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Story County, Paul G. Crawford, District Associate Judge.


        A defendant appeals convictions for possession of marijuana; failure to affix a drug tax stamp; possession of cocaine, third or subsequent offense; and possession of hydrocodone, third or subsequent offense. **AFFIRMED.**


        Andrew J. Boettger of Hastings, Gartin & Boettger, L.L.P., Ames, for appellant.

        Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney General, for appellee.


        Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**POTTERFIELD, Judge.**

Lamont Montee Williams appeals from his convictions for possession of marijuana; failure to affix a drug tax stamp; possession of cocaine; third or subsequent offense; and possession of hydrocodone, third or subsequent offense. Williams maintains the district court should have granted his motion to suppress evidence because the search-warrant application did not provide sufficient basis to support probable cause and the required nexus between the items sought pursuant to the warrant and the people or places searched.

## I.  Background Facts and Proceedings.

On November 9, 2015, Ames Police officers responded to a call from Sandra Fairbanks reporting a broken window at her residence.  While discussing the incident with Fairbanks at the front door to her residence, Officer Vincent Junior reported he could smell marijuana and see a hazy smoke inside the residence. After entering the residence with Fairbanks' consent, Officer Junior conducted a protective sweep, handcuffed the occupants of the residence—including Williams, Fairbanks, and a third adult—and applied for a search warrant.  A warrant was issued to search the Fairbanks residence and the three individuals, including Williams, found there by the officers.  In executing the search pursuant to the warrant, officers found $1240 in cash and a key to the apartment in Williams's pockets.  In a bedroom, officers found marijuana, white powder later identified as cocaine, and a prescription bottle with two hydrocodone pills.  Mail with Williams's name and male clothing were also found in the bedroom.

## II.  Standard of Review.

Because this case involves the constitutional right to be free from unreasonable searches and seizures, our review of the district court's suppression ruling is de novo. *See State v. Davis*, 679 N.W.2d 651, 656 (Iowa 2004). To determine whether probable cause has been established for the issuance of a search warrant, we review the totality of the circumstances. *Id.* We do not make an independent determination of probable cause but determine whether the issuing judge had a substantial basis for concluding probable cause existed. *Id.* We examine only the information actually presented to the court at the time of the application for the warrant. *Id.*

### III. Discussion.

#### a. Probable Cause.

The Iowa Supreme Court has held a trained officer's detection of a sufficiently distinctive odor, by itself or when accompanied by other facts, may establish probable cause. *State v. Watts*, 801 N.W.2d 845, 854 (Iowa 2011). Williams argues the warrant application did not demonstrate Officer Junior was qualified to recognize the odor of marijuana. Officer Junior's warrant application asserts there were illegal narcotics in the residence because he could "smell the odor of raw or burnt marijuana" from outside the residence. Williams claims Officer Junior's inability to differentiate between raw or burnt marijuana casts doubt as to his ability to recognize marijuana in any form.

Officer Junior's warrant application includes his qualifications in drug recognition: he had been a police officer for three years, had been involved with illegal drug investigations, attended classes at the Midwest Counter Drug Training Center, and had held conversations with cooperative suspects and informants

"about illegal drugs, their use, and distribution." Williams argues the application did not specifically include training for marijuana recognition or the smell of marijuana. Williams compares Officer Junior's qualifications to the qualifications of the officer in *Watts,* who had been a "Davenport police officer for seven-and-a-half years, had been involved in the investigation of controlled substance offenses for the past two years, and had attended schools pertaining to the investigation of controlled substance offenses." *Id.* at 855. That officer was found qualified to detect the odor of marijuana. Officer Junior, although having less time on the job than the officer in *Watts,* has very similar qualifications. All reasonable inferences should be drawn in support of finding a probable cause for the search warrant. *State v. McNeal,* 867 N.W.2d 91, 100 (Iowa 2015). Officer Junior's qualifications as set forth in the search warrant application are sufficient to establish probable cause in his identification of the odors coming from the residence.

### b. Nexus.

Williams next argues there is a lack of nexus between several items included on the search warrant and the facts contained in the search warrant application.

> Although a nexus must be established between the items to be seized and the place to be searched, direct observation is not required. That nexus can be found by considering the type of crime, the nature of the items involved, the extent of the defendant's opportunity for concealment, and the normal inferences as to where the defendant would be likely to conceal the items.

*State v. Groff*, 323 N.W.2d 204, 212 (Iowa 1982) (internal citations omitted).

> In determining if evidence seized pursuant to a warrant should be suppressed, 'the affidavit of probable cause is interpreted in a common sense, rather than a hypertechnical, manner.' We draw all reasonable inferences to support the judge's finding of probable

cause and give great deference to the judge's finding. Close cases are decided in favor of upholding the validity of the warrant.

*McNeal*, 867 N.W.2d at 100 (internal citations omitted).

In an action involving a structural challenge to the validity of a warrant, the burden of proof rests with the defendant. *State v. Fremont*, 749 N.W.2d 234, 236 (Iowa 2008).

Williams argues methamphetamine, cocaine, and opiates and its derivatives were included in the warrant as items to be seized without a basis in the application to believe they would be located at the residence or on the persons named. Officers seized white powder, later identified as cocaine, and a prescription bottle with two hydrocodone pills. Even if the search warrant application does not draw a nexus to these particular illegal drugs, they would have been discovered inevitably during the search for marijuana. Both the hydrocodone pills and the cocaine were found in places where marijuana could have been hidden. The inevitable-discovery doctrine allows evidence otherwise constitutionally excluded to be admitted when the police would have inevitably discovered the same evidence if acting properly. *State v. Tyler*, 867 N.W.2d 136, 171 (Iowa 2015).

Officers found identification and mail addressed to Williams in the bedroom where the drugs were found and a key to the apartment in Williams's pocket. The warrant allowed officers to search for: "evidence of occupancy, residency, and or ownership of the premises described above, including but not limited to utility and telephone bills, sealed envelopes, keys, lease agreements, mortgage records, loan documents, passports, photographs, and/or keys relating to safety deposit

boxes." Williams argues there is no credible connection between these items and the residence or people named in the application. Williams also argues there is no indication as to how items in this category constitute evidence of a crime of any type. We agree with the district court that because three people were present at the residence it would be important to determine who was in actual or constructive possession of the controlled substances that might be and later were found. *See State v. Maxwell*, 743 N.W.2d 185, 193 (Iowa 2008) (noting the State must establish the defendant "exercised dominion and control over the contraband, had knowledge of the contraband's presence, and had knowledge the material was a narcotic."). A nexus exists between evidence of residency and the facts contained in the search warrant application.

Officers found $1240 in cash in Williams's pocket. The search warrant authorized the seizure of "United States currency, food stamps and/or any other means of exchange commonly used in drug transactions." Williams argues there is no nexus between the facts contained on the warrant application, which do not indicate a suspicion of drug dealing, and searching for currency. He also argues there is no indication as to how items in this category constitute evidence of a crime of any type. We do not reach Williams's arguments regarding whether a nexus exists because the currency would have inevitably been discovered in a search incident to Williams's arrest.

As noted above, the inevitable-discovery doctrine allows evidence gathered despite Fourth Amendment violations to be admissible when the police would have inevitably discovered the same evidence acting properly. *Tyler*, 867 N.W.2d at 171. Williams was arrested following the execution of the warrant. A search

incident to arrest would have been performed, which would have yielded the currency found. A search incident to arrest allows a police officer "to search a lawfully arrested individual's person and the immediately surrounding area without a warrant." *State v. Christopher*, 757 N.W.2d 247, 249 (Iowa 2008) (citations omitted).

Williams also argues there is no credible connection between the following categories of property listed in the search warrant and the residence or people named, or any indication as to how items in these categories constitute evidence of a crime of any type:

> 1. Any and all paraphernalia, instrumentalities, substances, scales or documents which are evidence of the illicit possession, use, dealing, or distribution in controlled substances.
> 2. Addresses and/or telephone books, papers, cell phones, electronic records and photographs including names, address, and telephone numbers, of potential customers or associates of the occupants or residents of the above premises.
> 3. Books, records (written or electronic), receipts, bank statements and records, money drafts, letters of credit, money orders, cashier's checks, passbooks, and bank checks.

No such items were found; none were offered into evidence; there is nothing described in those paragraphs to be suppressed. "The appropriate remedy for [a Fourth Amendment] violation is suppression of all evidence directly or indirectly gathered through the search." *State v. Grant*, 614 N.W.2d 848, 855 (Iowa Ct. App. 2000). Because there was no evidence found, there is no evidence to suppress. We do not address the issue of whether there is a nexus between these items listed and the warrant application because Williams has no available remedy.

**IV. Conclusion.**

The district court properly denied Williams's motion to suppress. Reasonable inferences could be drawn to conclude Officer Junior was qualified to detect the odor or marijuana, supporting a finding of probable cause. The hydrocodone pills and cocaine would have inevitably been discovered during the search for marijuana, as would the $1240 in a search incident to arrest. A nexus exists between documentation of residency and property to be seized. We affirm the district court's denial of Williams's motion to suppress evidence.

**AFFIRMED.**