# IN THE COURT OF APPEALS OF IOWA

No. 18-2249
Filed December 18, 2019

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**JHAMOND McMULLEN,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Jeffrey Farrell (motion to suppress) and David May (bench trial and sentencing), Judges.

Jhamond McMullen appeals his convictions, sentences, and judgment following a bench trial and verdict finding him guilty of several drug-related offenses. **AFFIRMED IN PART, VACATED IN PART, AND REMANDED FOR RESENTENCING.**

Mark C. Smith, State Appellate Defender, (until withdrawal) and Mary K. Conroy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney General, for appellee.

Considered by Doyle, P.J., and Tabor and Schumacher, JJ. May, J. takes no part.

**DOYLE, Presiding Judge.**

Jhamond McMullen appeals his convictions, sentences, and judgment following a bench trial and verdict finding him guilty of six drug-related offenses: two counts of possession of a controlled substance with the intent to deliver as a second or subsequent offender and habitual offender; two counts of failure to possess a tax stamp as a habitual offender; possession of a controlled substance, third offense; and unlawful possession of a prescription drug.

McMullen contends the district court erred in four respects, asserting: (1) there was not probable cause for the search of his vehicle and his motion to suppress should have been granted, (2) the evidence was insufficient to show he knowingly possessed controlled substances and prescription drugs, (3) the court erred in imposing fines upon him in its sentencing order, and (4) the court erred in failing to determine his reasonable ability to pay restitution. The State concedes— and we agree upon our review—that the court erred in not suspending the fines in its sentencing order. We also find the district court did not follow the statutory procedures for ordering restitution. So we vacate those portions of the sentencing order and remand for resentencing consistent with this opinion. Finding no merit in McMullen's other two contentions, we affirm McMullen's convictions, sentences, and judgments in all other respects.

## I. Background Facts and Proceedings.

Ankeny Police Officer Brice Van Drimmelen stopped a car after he observed that "it was dark out and the headlights were not on." There were two people in the car. McMullen, owner of the car, was the passenger and Michaela Bush was driving.

When he got to the driver's side door, Officer Van Drimmelen smelled the odor of marijuana coming from inside the car. Officer Van Drimmelen then requested backup. Officer Tony Higgins arrived at the scene and walked up to McMullen's car. Officer Higgins's bodycam recorded his interactions, and the video was admitted into evidence at both the motion-to-suppress hearing and the trial. Officer Van Drimmelen asked the driver why the car smelled of marijuana, and the driver responded she did not know. Officer Van Drimmelen informed the driver that because he smelled marijuana he had probable cause to search the vehicle, and the officer had the driver step out of the car and sit in his squad car.

While Officer Van Drimmelen was assisting the driver from the stopped car, Officer Higgins watched McMullen from the passenger-side window, shining his flashlight into the vehicle onto McMullen's hands resting on the dashboard. Shortly after the driver got out of the car, McMullen moved his hands from the dashboard. Officer Higgins immediately directed McMullen to keep his hands where Officer Higgins could see them. Almost twenty seconds later, McMullen moved his left hand down the dashboard and out of view for a second, and Officer Higgins had McMullen get out of the car. Officer Higgins asked McMullen if he had anything that would stick him, poke him, or bite him or illegal on his body. McMullen answered, "No, I believe not."

Officer Higgins directed Officer Van Drimmelen to search McMullen, and Officer Van Drimmelen found a plastic baggie full of cash in McMullen's pocket. McMullen said it was $1500 and he might be getting a house. The officers asked McMullen when he had last smoked marijuana, and he denied smoking and stated

he did not know why the officer smelled marijuana. After they searched him, the officers placed McMullen into the back of Officer Higgin's squad car.

The officers then searched McMullen's car. In the passenger door compartment, the officers found a one-quart baggie of marijuana, a butane torch, and a digital scale that appeared to have some drug residue on it. In the center console cup holder, the officers found a red Solo cup with what they believed was loose marijuana. Inside the console, the officers found a zippered makeup bag containing a rainbow-colored grinder and two marijuana pipes. There was also a medium-sized orange prescription bottle that had no label but contained white-orange amphetamine capsules and atomoxetine capsules, both prescription but non-scheduled controlled substances in Iowa. A glass pipe was found in the driver-side door compartment.

The officers also found a blue backpack on the front-passenger-side floor full of miscellaneous items. In its main compartment, the officers found, among other things, five baggies of marijuana, a box with baggies in it, butane fuel, a digital scale cover, lotion, bars of soap, and air freshener. In the front compartment of the backpack, the officers found eight blister packs containing sixty-seven white tablets consistent with etizolam; one single blue amphetamine tablet; and twenty small, multi-colored squares of blotter paper containing 2C-B, a drug similar to LSD.

Bush and McMullen were questioned separately at the scene, and each denied knowing of or possessing the drugs found in the car and backpack. They also provided differing accounts of prior activities that day. McMullen told the officer he had loaned his car to another friend that morning, and the friend dropped

the vehicle off to Bush a couple of hours before the traffic stop occurred. McMullen told the officers that anything illegal in the car belonged to his friend. Bush stated she had been with McMullen since that morning, and they "hung out" and spent time driving around in McMullen's car. Bush said the backpack and the makeup bag were not hers.

McMullen was arrested and charged with various offenses, including possession of a controlled substance and unlawful possession of a prescription drug. The State then filed an eight-count trial information accusing McMullen of possession of a controlled substance with intent to deliver as a habitual offender, among other things.

McMullen moved to suppress the evidence obtained from the search of his car. He asserted Officer Van Drimmelen's claim to have smelled marijuana lacked credibility and therefore there was not probable cause to support the search. Following a hearing, the district court denied McMullen's motion. Relevant here, the court found Officer Van Drimmelen's testimony credible:

> In this case, Officer Van Drimmelen testified that he smelled marijuana coming from the car. He has been trained on the distinct smell of marijuana and has experience identifying the odor of marijuana during his two years as an officer. [McMullen] criticized the officer that he could not better describe the smell of marijuana, but, the officer testified that, from his standpoint, marijuana smells like marijuana. The same is true with many distinct smells, in that it may be difficult to compare one odor to another odor or to describe it in detail. [McMullen] criticized the officer that he could not distinguish between raw and burnt marijuana, but he did not present any evidence to show that the distinction is material. [McMullen] argued that the driver denied smelling marijuana, but she also stated she did not know what marijuana smelled like. Even though she was ultimately released by the officers, that does not mean that they believed everything she said [w]as the truth. Their decision to release her was based on defendant owning the car—not what she told officers about smelling marijuana.

Officer Van Drimmelen's testimony was otherwise logical and credible. He stopped the car for a legitimate reason because it did not have its lights on after dark. There is no indication that he knew the occupants or stopped the car for any other reason. He smelled marijuana after the driver rolled down her window and immediately requested a second unit as backup. He has training and experience in detecting the smell of marijuana. There is no reason to believe that he simply made up the smell of marijuana to justify a search. There are no good grounds to discount his testimony.

After a bench trial, the district court found McMullen guilty on six of the eight counts:

Count I: Possession of a Controlled Substance With Intent to Deliver, to wit: 4-bromo-2,5-dimethoxyphenethylamine (2C-B).
Count II: Failure to Affix Tax Stamp, to wit: Ten or More Dosage Units of 4-bromo-2,5-dimethoxyphenethylamine (2C-B).
Count III: Possession of a Controlled Substance with Intent to Deliver, to wit: marijuana.
Count IV: Failure to Affix Tax Stamp, to wit: 42.5 grams or more of marijuana.
Count VII: Possession of a Controlled Substance, to wit: Amphetamine.
Count VIII: Unlawful Possession of a Prescription Drug, to wit: Atomoxetine.

The district court entered its sentencing order following a December 2018 sentencing hearing. Relevant here, the court's sentencing order did not check the box to indicate fines had been suspended, contrary to the court's intent. At the end of the order, the court costs were taxed to McMullen.

## II. *Discussion.*

McMullen appeals. He contends the district court erred in denying his motion to suppress and in finding substantial evidence he knowingly possessed controlled substances and prescription drugs. He also challenges portions of the sentencing order.

### A.  *Motion to Suppress.*

Because this case involves the constitutional right to be free from unreasonable searches and seizures, our review of the district court's suppression ruling is de novo.  *See State v. Storm*, 898 N.W.2d 140, 144 (Iowa 2017); *State v. Davis*, 679 N.W.2d 651, 656 (Iowa 2004).  This requires "an independent evaluation of the totality of the circumstances" of the entire record.  *Storm*, 898 N.W.2d at 144 (citation omitted).  But because the district court had a chance to assess the credibility of the witnesses, we give the court's fact-findings deference, though we are not bound by those findings.  *See id.*

Warrantless searches are per se unreasonable unless they fall within the carefully drawn exceptions to the warrant requirement.  *State v. Gaskins*, 866 N.W.2d 1, 7 (Iowa 2015).  One of those exceptions is probable cause coupled with exigent circumstances, termed the automobile exception when applied to motor vehicles.  *See Storm*, 898 N.W.2d at 145.  The Iowa Supreme Court has held a trained officer's detection of a distinctive enough odor, by itself or when accompanied by other facts, may establish probable cause.  *See State v. Watts*, 801 N.W.2d 845, 854 (Iowa 2011); *see also State v. Eubanks*, 355 N.W.2d 57, 59 (Iowa 1984) ("[T]he patrolman clearly had sufficient probable cause to search the vehicle and its contents.  The patrolman smelled the odor of marijuana drifting from the car when he approached defendant, who was seated behind the steering wheel.  The odor of that controlled substance in the automobile gave the patrolman reasonable cause to conduct a comprehensive search of the car.").

McMullen argues there is insufficient evidence that Officer Van Drimmelen was qualified to identify the smell of marijuana and therefore there was no basis

for probable cause. He takes particular issue that Officer Van Drimmelen testified that "[m]arijuana smells like marijuana." McMullen also points out Officer Van Drimmelen had only been an officer for little over a year and only had a small amount of training related to narcotics.

Smell is a sense that is hard describe. As one scholar noted, "The sense of smell is one that by its very nature requires permitting a witness to testify in the form of an opinion. It is virtually impossible to verbally describe a smell except in terms of conclusions rather than specific identifiable facts." Barbara E. Bergman et al., 3 Wharton's Criminal Evidence, *Smell* § 12:11 (15th ed. 2019). "Most persons would probably find it difficult to describe the odor of a rose, whiskey, beer, or limburger cheese, but this difficulty could scarcely be regarded as affecting the value of their testimony that they were familiar with and recognized the particular odor." *People v. Reed*, 164 N.E. 847, 850 (Ill. 1928).

A similar argument was made in *United States v. Arrasmith*, 557 F.2d 1093, 1094 (5th Cir. 1977), where a border patrol agent testified "marijuana smells like marijuana." The Fifth Circuit, affirming Arrasmith's conviction, observed:

> Arrasmith's real objection, of course, is not to the tautological notion that marijuana smells like marijuana; whatever else marijuana does or does not smell like, it certainly smells like itself. But the statement that "marijuana smells like marijuana" may also convey the meaning that the odor of marijuana is distinctive and easily recognized. To the extent that the district judge may have accepted that meaning, however, he had an ample evidentiary basis for doing so, for the agent had so testified. Litigation could not go forward if we were to adopt the general principle that a factfinder who accepts testimony as true thereby takes improper judicial notice of its truth.
>
> Whether the agent smelled marijuana was a factual question relevant to the probable cause issue. In resolving that factual question, the district court relied upon the testimony of an experienced border patrol agent who said he had smelled marijuana many times. The court neither limited Arrasmith's cross-examination

of the agent nor prevented him from introducing any relevant evidence. The district court conscientiously found the facts on the basis of the evidence and did not take into account impermissible considerations.

*Arrasmith*, 557 F.2d at 1095.

The same is true here. While Officer Van Drimmelen could have described the smell of marijuana in other ways, McMullen points to no authority requiring the officer to describe the odor with the specificity of a sommelier. The district court heard the officer's testimony about his qualifications and his knowledge on the subject, and the court found Officer Van Drimmelen "has training and experience in detecting the smell of marijuana." The court determined Officer Van Drimmelen was credible and believed the officer's qualifications, experience, and actions supported the officer's testimony that he smelled the odor of marijuana. Upon our de novo review of the record, we agree with the district court that Officer Van Drimmelen was qualified to detect the distinctive odor of marijuana. So the officer's detection of the marijuana odor established probable cause for the search. We affirm on this issue.

### B. Sufficiency of the Evidence.

"Sufficiency of evidence claims are reviewed for correction of errors at law, and we will uphold a verdict if substantial evidence supports it." *State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017). If the evidence viewed in the light most favorable to the State "can convince a rational jury that the defendant is guilty beyond a reasonable doubt," the evidence is considered substantial. *Id.* (citation omitted).

"Possession may be actual or constructive." *State v. Reed*, 875 N.W.2d 693, 705 (Iowa 2016) (footnote omitted). Here, the State relies on a theory of constructive possession, which can "be proved by inferences." *Id.* To establish constructive possession, the evidence must show the defendant "has knowledge of the presence of the controlled substance and has the authority or right to maintain control of it." *Id.* Although a defendant's proximity to the contraband is pertinent, it "is not enough to show control and dominion." *Id.* (citation omitted). In determining whether the defendant possessed contraband discovered in jointly occupied structures, there are several nonexclusive factors to consider:

> (1) incriminating statements made by a person; (2) incriminating actions of the person upon the police's discovery of a controlled substance among or near the person's personal belongings; (3) the person's fingerprints on the packages containing the controlled substance; and (4) any other circumstances linking the person to the controlled substance.

*Id.* at 706 (citation omitted). But mere suspicion, speculation, or conjecture cannot establish guilt. *See id.*

Viewing the evidence in the light most favorable to the State, we find substantial evidence supports the district court's determination that McMullen had constructive possession of the contraband in his car. The pieces of evidence supporting the guilty verdicts are not separate pieces of evidence to be viewed in isolation; they are to be considered as a whole. *See id.* at 707. Here, the factors supporting that McMullen possessed the contraband are as follows. The car belonged to McMullen. All of the contraband, and particularly the backpack, was within McMullen's reach. McMullen claimed he did not know the contraband was in the vehicle and stated it must have belonged to his drug-dealing friend. Yet a

reasonable person would have observed the open, exposed cup in the console containing marijuana. Furthermore, his story that he had loaned the car to a friend conflicted with Bush's account. Add to McMullen's less than credible explanation for how the contraband came to be in the car, McMullen's furtive movements, the large amount of cash on his person in a baggie, and Officer Higgins's observation of marijuana shake[1] on the belly portion of McMullen's shirt, a rational fact-finder could find McMullen knew of the presence of the controlled substance in the car and had the authority or right to maintain control of it. There is substantial evidence in the record that could convince a fact-finder that McMullen is guilty beyond a reasonable doubt. So we affirm the district court's findings of guilt.

### C. Sentencing Order.

"We review the district court's restitution order for errors of law." *State v. McMurry*, 925 N.W.2d 592, 595 (Iowa 2019) (citation omitted). We also review claims of an illegal sentence for correction of errors at law. *See State v. Petty*, 925 N.W.2d 190, 195 (Iowa 2019). Because McMullen challenges his sentence on constitutional grounds, our review is de novo. *See id.*

The State concedes McMullen's sentencing order imposing fines rather than checking the box to suspend the fines was an inadvertent error by the court, and the State agrees remand for entry of an order *nunc pro tunc* is appropriate. McMullen argues he was ordered to pay court costs without a showing that he had

---

[1] The officer explained marijuana shake "is small particles of the marijuana leaf or may be stems that are, you know, spread about. We call it shake, but it's just actual particles of marijuana leaves." "Typically, when somebody gets marijuana shake around or somewhere, it's when they're dividing up the leaves to prepare, like, to smoke it, or to break it up, you know, different pieces to sell, and that's usually how that happens. But I'm usually not there when it's being done."

the reasonable ability to repay those obligations. In his view, the district court had an obligation to make a determination regarding his reasonable ability to pay restitution before issuing a plan of restitution, citing the recent Iowa Supreme Court case *State v. Albright*, 925 N.W.2d 144, 158-61 (Iowa 2019). The State insists McMullen's restitution challenge is premature because the district court has not entered a final order setting the amount of restitution for court costs and attorney fees. We disagree.

Under *Albright*, because the total amount of costs and fees were not known when the sentencing order was entered, the court could not have considered McMullen's reasonable ability to pay. *See* 925 N.W.2d at 161-63. We must therefore vacate the portion of the sentencing order addressing restitution and remand the case to the district court to impose restitution consistent with the opinion. *See, e.g.*, *State v. Headley*, 926 N.W.2d 545, 548 (Iowa 2019). Because we are vacating the sentencing order and remanding to the district court, we direct the district court to also make the appropriate correction to the suspension of fines consistent with that court's intent at that time.

### III. Conclusion.

For these reasons, we vacate the portions of the district court's sentencing order concerning the suspension of fines and restitution, and we remand the case to the district court to impose restitution consistent with *Albright* and to correct the lack of suspension of fines. We affirm McMullen's convictions, sentences, and judgments in all other respects.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED FOR RESENTENCING.**